RUSSELL SMITH et al., Plaintiffs, *v.* NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY OF THE CITY OF MILWAUKEE, Defendant.

Supreme Court, Trial Term, Allegany County, October 8, 1952.

*Will Mountain* for plaintiffs.

*Lyle Hornbeck* for defendant.

O'BRIEN, J. These four actions having the same title, but each referring to a different policy of insurance, were consolidated and submitted on an agreed state of facts. Throughout this opinion I have designated the actions involving the respective policies, as follows:

Action No. 1 as covering Policy #622,492, issued May 27, 1905;

Action No. 2 as covering Policy #695,622, issued March 27, 1907;

Action No. 3 as covering Policy #695,623, issued March 7, 1917;

Action No. 4 as covering Policy #1,526,515, issued August 22, 1921.

Each policy was issued to one Sherrill Smith, as the insured. He died April 10, 1951.

The parties agree that the only question presented for determination is whether the plaintiffs have the right to elect to accept payment under the provisions of Option A, which permits retention by the company of the amount due on the death of the insured and the annual payment to the beneficiaries of an annuity of 3%, or whether payment must be taken by the plaintiffs immediately of the total amount due, on the filing of proof of the death of the insured. No policy, when issued, was made payable to any named beneficiary but later by an appropriate indorsement, the insured named his wife as beneficiary and his children (these plaintiffs) as contingent beneficiaries. The insured's wife predeceased him.

The defendant contends that the " contingent beneficiaries " do not have the right to elect payment under the provisions of Option A.

While the defendant concedes that if the wife of the insured had survived him, there would be no question but that she, as the named beneficiary, could elect payment under the provisions of Option A, it contends that such right of election is not available to " contingent beneficiaries ". The company, accordingly, refuses to recognize or accept the notices given by the plaintiffs of their election to take the annuity method of payment under and pursuant to said Option A of the respective policies.

There are differences in the form and wording of the respective policies; hence I have considered the facts and determined the rights of the parties in each cause of action separately.

*Action No. 1*

This action involves a twenty-payment life policy No. 622,492. It was issued on May 27, 1905. When issued, it was made payable " to such Beneficiary or Beneficiaries of Sherrill Smith, the insured, of Cuba, in the State of New York as may hereafter be nominated under this contract", subject to the right of the insured to change the beneficiary or beneficiaries. The policy provides that " if no beneficiary shall survive the said insured, then such payment shall be made to the executors, administrators or assigns of said insured."

It further provides in clause fifth under the heading of " Benefits and Privileges ", as follows: " The insured, subject to the rights of any assignee, may nominate as Beneficiary, or Beneficiaries, provided none be herein named, or may change the Beneficiary or Beneficiaries, at any time during the continuance of this Policy by filing with the Company a written request accompanied by this Policy, such nomination or change to take effect upon the endorsement of the same on the Policy by the Company."

The second paragraph of said fifth clause reads: " Subject to the rights of any assignee and subject to change by the person or persons nominating, a Beneficiary or Beneficiaries in succession, hereinafter designated as contingent Beneficiary or Beneficiaries, may be nominated in writing at any time by the Insured, or in the event of his failure to so nominate, by the Beneficiary or Beneficiaries, if of lawful age."

An indorsement, typewritten upon the policy and dated " Nov. 13, 1933 ", states: " By request of the insured, Elnora Eaton

Smith, wife, is designated as beneficiary. Russell and Florence Smith, Children, are designated as contingent beneficiaries, share and share alike, or the survivor. It is hereby expressly agreed that the right is reserved to the insured to obtain loans from the Company upon security of this policy, or to surrender the same for its cash value, without the consent or participation of any beneficiary not now or hereafter irrevocably designated, or of any contingent beneficiary. The rights of the beneficiary and contingent beneficiaries shall be subject and subordinate to any outstanding indebtedness on account of this policy in favor of the Insurance Company.''

It is significant to note that the above provides that if the nominating party designated '' a Beneficiary or Beneficiaries in succession '', the latter are '' hereinafter designated as contingent beneficiaries.'' This clearly means that contingent beneficiaries are '' Beneficiaries in succession.''

When the policy was originally issued, it was payable to '' such Beneficiary or Beneficiaries of Sherrill Smith, the insured * * * as may hereinafter be nominated under this contract.'' Later the insured exercised said right by the above-quoted indorsement on the policy.

The insured's use of the words '' contingent beneficiaries '' in the indorsement naturally suggests the thought that, in the event of the death of the named beneficiary, he wanted his children, or the survivor of them, to get the benefits of the policy. The contingency occurred and, in my opinion, the plaintiffs as such contingent beneficiaries may elect to have the proceeds paid under the provisions of Option A. The policy provides that '' The insured during his lifetime * * * , or the Beneficiary or *Beneficiaries when this policy becomes payable,* (underscoring is mine) provided the Insured shall not have otherwise directed, shall have the right to elect, in lieu of payment in one sum, either of Options A, B or C.''

The wording of Option A is as follows:

'' To have the whole or any part not less than $1,000 of the proceeds of this Policy at the death of the Insured, including any dividend additions then in force, retained by the Company until the death of the last surviving Beneficiary or contingent Beneficiary, the Company in the meantime to pay an annuity equal to three per cent of the amount so retained, the first annuity being payable one year after the death of the Insured.

'' At the time any annuity payment becomes due, the Beneficiary or Beneficiaries, if of lawful age provided the Company

has not been otherwise directed by the Insured, shall have the right, upon due surrender of this Policy, to withdraw the amount so retained by the Company, in addition to such annuity payment, and if said amount be so withdrawn the annuity payments shall cease.''

There is no language in the policy which directly states that '' contingent beneficiaries '' shall not have the right to elect to take payment under the provisions of Option A. Yet, if that limitation were intended, it could very easily have been stated in unmistakable and concise language. The insured lived over a year after the death of his wife and made no change in the designated beneficiary or beneficiaries in the policy.

In my opinion, it would be giving a forced and unnatural meaning to the provisions of this policy if they were construed to deny to the contingent beneficiaries, who are the children of the insured and the plaintiffs in this action, the right to elect payment under the terms of Option A. The construction I have placed upon the policy seems very clearly justified, but if such is not the case, then the meaning of the contract is ambiguous and uncertain.

In respect to the construction of doubtful and uncertain contracts, there are numerous decisions holding that such language should be resolved against the one that used it in composing the agreement. One of the recent cases, *Whiteside* v. *Insurance Co.,* (274 App. Div. 36 [1948], motion for leave to appeal denied 274 App. Div. 875) construed the meaning of a special floater form of personal property insurance. In considering the problem of construction, the court states (pp. 38–39) : '' The courts have repeatedly held that the interpretation of a clause in a policy of insurance is to be determined by what it means to the ordinary businessman, not what it might convey on careful analysis to a trained lawyer. If the insurance company desired to limit its liability as drastically as it claims it purported to do, it should have expressed that limitation in language that would reasonably have conveyed its meaning to an intelligent layman; it should have been so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence. This the insurer plainly failed to do.''

Another recent discussion on the principles of construction appears in *McGrail* v. *Equitable Life Assur. Soc.* (292 N. Y. 419 [1944]). There the court states at page 424 of its opinion: '' Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other con-

tracts. When the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense [citing case]. But resort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity [citing case] or place one party at the mercy of the other [citing case]. Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written '' [citing case].

In view of the circumstanecs, it is my conclusion that the plaintiffs have the right to elect to have the proceeds of policy No. 622,492 involved in this action, and which were conceded to be the sum of $4,108.94, as of the date that proof of the insured's death was filed with the company, paid to them in accordance with their election pursuant to the provisions of Option A.

### Action No. 2

This policy No. 695,622, was issued on March 27, 1907. Like the policy involved in Action No. 1, it provided for the payment of premiums for twenty full years, or until the prior death of the insured.

As originally issued, it was made payable in the same manner as policy No. 622,492. Later, and on the same date, the same indorsement was made on this policy as on the one involved in Action No. 1. While there is some change in the wording of this policy and that involved in Action No. 1, there is no alteration in meaning insofar as our problem is concerned. This policy also provides that if the insured designates '' a beneficiary in succession '', such beneficiary shall be known as a '' Contingent Beneficiary ''.

Again, it seems clear to me that while the indorsement designates the children as '' Contingent Beneficiaries '', it, in effect, made them '' beneficiaries in succession '' after the wife, Elnora Eaton Smith, who predeceased the insured.

Based upon the reasons above stated and those given in reference to the policy involved in Action No. 1, it is my opinion that the plaintiffs are entitled to elect to receive payment of the proceeds of the policy (No. 695,622) which were conceded to be $3,977.73, under the provisions of Option A thereof.

### Action No. 3

This policy No. 695,623, was issued March 7, 1917. An indorsement typed thereon states: " This policy is issued in lieu of the surrender of a 10 year Renewable Term policy of like number and is accepted pursuant and subject to the application upon which the original policy was issued. The provisions herein contained shall be construed as if the policy were dated March 27, 1907." The policy also provides for the payment of premiums for twenty full years, or until the prior death of the insured.

An indorsement dated November 13, 1933, designates Elnora Eaton Smith, wife, " as beneficiary and Russell and Florence Smith, children " as " contingent beneficiaries ".

The wording of this policy is the same as that of policy No. 695,622, which is the subject of Action No. 2.

For the reasons I have set forth in relation to the policies in Actions No. 1 and No. 2, it is my conclusion that the plaintiffs have the right to elect to take payment of the proceeds of this policy, which are conceded to be $3,009.63 under the provisions of Option A thereof.

### Action No. 4

This policy No. 1,526,515, was issued August 22, 1921. It is an ordinary life policy. It was issued payable " unto such Beneficiary as may hereafter be designated under this contract, if any."

By an appropriate indorsement typed on the policy under date of November 13, 1933, Elnora Eaton Smith, the insured's wife, was designated as " beneficiary " and " Russell and Florence Smith ", his children were designated as " contingent beneficiaries."

This policy states that the insured

" (1) may designate one or more Beneficiaries, if none be named herein, either with or without reservation of the right to revoke such designation; and

" (2) may designate one or more Contingent Beneficiaries whose interest shall be expressed in, or by endorsement of the Company, on this Policy; and

" (3) may change any Beneficiary not irrevocably designated; and

" (4) may change any Contingent Beneficiary ".

It also provides "If there be more than one Beneficiary, the interest of any deceased Beneficiary shall pass to the survivor or survivors unless otherwise directed by the insured ".

Unlike the previously discussed policies, this one does not by its terms expressly specify that " a beneficiary in succession " shall be known as a " Contingent Beneficiary ".

While the face sheet of the policy mentions that the insured may designate one or more " Beneficiaries " and one or more " Contingent Beneficiaries ", it does not make any limitation on the rights of Contingent Beneficiaries to elect payment under Option A.

In this policy, the rights of those who might become entitled to its payment are expressed under the heading " SPECIAL PROVISIONS RELATING TO SETTLEMENT WHEN THIS POLICY BECOMES PAYABLE." These provisions state: " The Insured shall have the right, with the privilege of revocation and change, to elect in lieu of payment in one sum, either Option A, B or C, or that the amount payable be distributed under two or more of said options. The Beneficiary or Beneficiaries *when this Policy becomes payable shall have the same right and privilege* (underscoring is mine), if no such election effected by the Insured shall then be in force."

Another provision states: " if there be more than one Beneficiary when this Policy becomes payable, the interest of any such Beneficiary deceased, shall * * * pass to the survivor * * * unless otherwise directed by the Insured."

Other pertinent clauses read as follows: " Unless otherwise directed by the designator, *the Contingent Beneficiary or Beneficiaries,* [italics mine] * * * shall upon * * * the death of the last surviving Beneficiary, succeed to all the interest, rights and privileges then possessed by such Beneficiary." And also " at the death of the last surviving Beneficiary *if there be no Contingent Beneficiary then living* or *at the death of the last surviving Contingent Beneficiary occurring* subsequently thereto, *the amount retained* by the Company *under Option A* shall * * * be paid to the executors, administrators or assigns of such last surviving Beneficiary or *Contingent Beneficiary* (italics mine) upon due surrender of this Policy."

Under the provisions set forth under the clause headed " Option A ", the proceeds are to be held and annual interest paid at the rate of 3% " until the death of the last surviving Beneficiary or Contingent Beneficiary."

It is my opinion that the provisions of the policy would be construed by the ordinary average person as meaning that the plaintiffs were and are the " Beneficiaries when this policy became payable."

Applying the rules of construction and interpretation previously set forth in the discussion of the policies involved in the other causes of action, it is my conclusion that the plaintiffs are entitled to elect to receive payment of the proceeds of the policy (No. 1,526,515) which are conceded to be $14,994.34, under the provisions of Option A thereof.

In arriving at the above conclusions I have not overlooked the cases cited by the defendant, viz., *Lange* v. *Metropolitan Life Ins. Co.* (278 N. Y. 626); *Feine* v. *State Mut. Life Assur. Co.* (152 Misc. 897); *Northwestern Mut. Life Ins. Co.* v. *Fink* (118 F. 2d 761); and *People's Nat. Bank* v. *Northwestern Mut. Life Ins. Co.* (237 S. W. 2d 870 [Ky.]).

### *Actions No. 1, No. 2, No. 3 and No. 4*

Upon the presentation of these actions, the attorney for the defendant offered in evidence a booklet entitled " Settlement Options 1951, Tenth Annual Edition, a Flitcraft publication ". It was offered to show that the interpretation for which the defendant company contends, in respect to the provisions of the policies, has been published and broadcast to the insurance trade, annually since 1940, by a concern which for years has been publishing for the insurance trade, booklets and manuals setting forth the rights, privileges, benefits, premiums and special features of various types of policies of life insurance issued by the various insurance companies.

Timely and appropriate objection to the receipt of such publication was made by the attorney for the plaintiffs and the court stated that a ruling on the objection would be announced in this opinion. Upon consideration it seems clear that such booklet is inadmissible for many reasons and, therefore, the objection to its receipt is hereby sustained.

Likewise, the court reserved decision on timely and appropriate objections of the attorney for the defendant to the receipt in evidence of a letter dated May 13, 1952, from said Flitcraft to the attorney for the plaintiff, explaining that the source of the information published in the booklet marked defendant's Exhibit A, for identification, was given to it by the defendant; also an undated memo typed on the personal stationery of the insured and attached to the insurance policies when they were found among his papers after his decease. Both the letter and the memo are clearly inadmissible and the objections to their receipt are hereby sustained.

Let judgment be entered accordingly, with one bill of costs to the plaintiffs.