STUART C. WHITESIDE, Doing Business under the Name of JOSEPH S. WHITESIDE & Co., Plaintiff, v. INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Defendant.

First Department, June 21, 1948.

*Robert J. Trainor* of counsel (*Frank C. Bowers* with him on the brief), for plaintiff.

*Alfred B. Nathan* of counsel (*Nathan, Mannheimer, Asche & Winer,* attorneys), for defendant.

SHIENTAG, J. The question presented on this submission of controversy involves the interpretation of one of the clauses in what is characterized as a " Special Floater " form of policy issued by defendant to plaintiff in the sum of $5,000.

Plaintiff was in the textile business as a commission merchant and in addition sold textiles which he caused to be manufactured from raw materials. Defendant is an insurance company authorized to do business in the State of New York. On December 17, 1942, in consideration of a premium of $100 which plaintiff paid, defendant executed and delivered to plaintiff an insurance policy which was in full force on January 8, 1943. On that date a fire occurred in the premises of Barbour Blankets & Woolens, Inc. (hereinafter called Barbour), at its plant in Phillippi, West Virginia. As a result of the fire goods belonging to plaintiff valued at $9,938.12 were destroyed. These goods were in the possession of Barbour, as a bailee of plaintiff, which had custody of the merchandise for the purpose of processing it. Plaintiff Whiteside owned all of the preferred stock and 50% of the common stock of Barbour and plaintiff's attorney owned the remaining 50%. At the time of the fire plaintiff and his wife were, respectively, president and treasurer of Barbour and were directors. Barbour was subject to the liability which arose as matter of law out of the relationship of bailor and bailee. At no time did plaintiff enter into any agreement with Barbour respecting the latter's liability as bailee nor did the parties enter into any contract pursuant to which Barbour would be held liable for the safe return of plaintiff's property regardless of fault. The fire was not caused through the negligence of Barbour and it was not legally liable for the loss of plaintiff's property. Barbour was solvent at the time of the fire and carried insurance on

its own property and on property held by it for others to the extent for which it was legally liable. The insurance carried by Barbour was in the sum of $15,000 which was less than the value of its own property destroyed by the fire.

At the time of the fire the actual cash value of plaintiff's property, described in the policy, including the property destroyed and not otherwise insured, was $17,587.10; $2,825.40 represents that portion of the loss of $9,938.12 which the sum of $5,000, the amount insured by the policy in suit, bears to $17,587.10, the aggregate cash value of plaintiff's property. Defendant has refused to pay the loss and no portion thereof has been collected from any other source. Plaintiff claims judgment against defendant in the sum of $2,825.40.

Among other things the typewritten indorsement attached to the policy provided that it excluded "any loss or damage due to the actual processing." It further contained the following clause the interpretation of which is here in controversy: "It is further warranted that the assured will hold processors or any other bailees liable for the safe return of property."

Defendant contends that this clause would be understood by the ordinary businessman to mean that he was obliged to contract with each and every one of his processors or bailees so as to make them liable for the safe return of the merchandise regardless of the negligence or fault of the processor or bailee; in other words, to make them insurers of the plaintiff's bailed property. The difficulty with defendant's contention is that whenever there was a bailment there would in effect be no coverage under the policy except in the event of insolvency on the part of the bailee which would prevent him from carrying out a contract of absolute liability. Instead of getting a "floater policy" as that term is commonly understood, all that plaintiff would be getting, if the defendant's contention is sound, is a policy insuring the solvency of his bailees, and if the bailees wanted to protect themselves against any absolute contractual liability, they would have to carry their own insurance.

It may have been the purpose of the insurer in inserting this clause to evade liability in practically all cases of loss of property while in the possession of a bailee; but if that is so, taking out insurance of this type would be of little business utility.

The courts have repeatedly held that the interpretation of a clause in a policy of insurance is to be determined by what it means to the ordinary businessman, not what it might convey on careful analysis to a trained lawyer. If the insurance company desired to limit its liability as drastically as it claims it purported to do, it should have expressed that limitation in language

that would reasonably have conveyed its meaning to an intelligent layman; it should have been so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence. This the insurer plainly failed to do.

The meaning of the clause in controversy to the ordinary businessman is that in the event of loss, if there is legal liability of any kind against the bailee, the assured will do whatever is reasonably necessary to enforce that liability. At any rate the clause does not inform the assured that he is covered only and to the extent that he makes a special contract with his bailee extending the latter's ordinary legal liability and making him an insurer of the bailed merchandise. At best the clause is highly ambiguous and that ambiguity should be resolved against the insurance company which wrote it.

Judgment is directed for plaintiff as prayed for in the submission, without costs.

DORE, J. P., COHN, CALLAHAN and VAN VOORHIS JJ., concur.

Judgment unanimously directed for plaintiff, without costs. Settle order on notice. [See *post,* p. 875.]