REGINE H. TYROLER, Respondent, v. CONTINENTAL CASUALTY COMPANY, Appellant.

First Department, November 7, 1968.

*John B. Foley* of counsel (*McCormick, Dunne & Foley,* attorneys), for appellant.

*Donald Marks* of counsel (*John Buckley* with him on the brief; *Baer & Marks,* attorneys), for respondent.

McGIVERN, J. The plaintiff, a woman over 90 years of age, was issued in 1961 by the defendant insurance company a medical policy described in bold print as a " 5000 Reserve Hospital Policy ", " available only to persons over 65 years of age." She paid the premiums as they became due and the company accepted them. Come the year 1965–66, she became ill and entered the Lenox Hill Hospital, New York City. On recommendation of her attending physician, special duty or private nurses were engaged through the nurse's registry at the hospital. These nursing charges appeared on the bills received by the plaintiff ascribed to " Nurse ", along with the usual miscellany found on hospital bills. The defendant insurance company has refused to pay these charges.

Action for the amount of the nursing charges having been brought in the Civil Court of the City of New York, a jury verdict was returned in favor of the defendant company. The Appellate Term of the Supreme Court unanimously reversed the judgment and directed to the contrary that judgment be

given the plaintiff. With this disposition of Appellate Term, we agree.

The plaintiff, as an average person, was entitled to derive the impression that the nurses in question were employees of the hospital and that a charge for their services was made by the hospital. Dr. Korelitz, a staff member of Lenox Hill, testified that he too was of like opinion. Actually, such nurses were paid by the hospital, even when payment had not been received from the patient; they were subject to assignment by the hospital; the bill rendered the patient carried no indication that payment for nurses went to them and not to the hospital. And at the end of each year the hospital gives to each nurse, for tax purposes, a sheet showing earnings paid. The welcome brochure available for patients did not affect the plaintiff with notice. There is no proof such a copy was given the plaintiff or that her attention was adverted to it. Indeed, its admission into evidence before a jury could be regarded as prejudicial error. Furthermore, the hospital was not a party to the policy and no mere hospital pamphlet can alter the terms of the policy, previously issued to the plaintiff.

In our opinion, Appellate Term was correct in finding that: "The insurance policy being unambiguous, it should be construed according to the plain and ordinary meaning of its terms (*Houlihan* v. *Preferred Acc. Ins. Co.,* 196 N. Y. 337; *McGrail* v. *Equitable Life Assur. Soc.,* 292 N. Y. 419; *Lachs* v. *Fidelity & Cas Co. of N. Y.,* 306 N. Y. 357) ''. This is but in accord with our consistent rulings on policies of a like or similar character.

In *Whiteside* v. *Insurance Co. of Pa.* (274 App. Div. 36, 38–39 [1st Dept., 1948]) this court, in construing a " special floater " form of policy issued by defendant to plaintiff, said: " The courts have repeatedly held that the interpretation of a clause in a policy of insurance is to be determined by what it means to the ordinary businessman, not what it might convey on careful analysis to a trained lawyer. If the insurance company desired to limit its liability as drastically as it claims it purported to do, it should have expressed that limitation in language that would reasonably have conveyed its meaning to an intelligent layman; it should have been so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence ''.

Perhaps it was most simply stated in *Lachs* (*supra,* p. 364): " We all know that a contract of insurance, drawn by the insurer, must be read through the eyes of the average man on the street or the average housewife who purchases it.'' And the plaintiff herein, being a nonagenarian, we can hardly expect

of her the mental precision of a corporation lawyer. She should not now be faulted for her interpretation that the nursing charges in question were made by the hospital.

The defendant company, in part IV of the policy, had the prescience to exclude from coverage five various and specific contingencies. If the defendant had in contemplation that the special nurse charges were not to be included, by the addition of one phrase, it could have excluded the charges representing the services of special nurses. But, it did not do so.

The determination of Appellate Term should be affirmed, with costs and disbursements.

BOTEIN, P. J. (dissenting). While plaintiff was a patient at Lenox Hill Hospital she was attended, upon the recommendation of her physician, by "private duty" or "special duty" nurses, stated in the record to be nurses whose "services during the period of time are exclusively for the patient." The nurses were obtained by the hospital and the bills which plaintiff received from the hospital included charges for their services. Plaintiff was the holder of a "5000 Reserve Hospital Policy" issued by defendant, and, having paid the bills, sought reimbursement from defendant pursuant to the policy provision requiring the latter to pay "the reasonable expense actually incurred for necessary miscellaneous hospital care and treatment for which a charge is made by the hospital." Defendant refused to pay the nursing charges, and this action was brought to recover them. The jury returned a verdict in favor of defendant. Appellate Term reversed the judgment entered on the verdict and directed judgment for plaintiff, stating, "The issue was one of law and it was error to submit it to the jury."

That the nursing expense was reasonable in amount was not in dispute at the trial, nor was there any question that the nursing constituted "necessary * * * hospital care." The sole issue — a factual one — was whether a charge for the nursing had been made by the hospital. Appellate Term stated, and evidently regarded as conclusive, that "The hospital bill included the charge for nursing services." The content of the hospital bill, however, while of course having an important bearing, was not necessarily controlling in view of the testimony which defendant adduced. Thus, the patients' accounts manager of Lenox Hill Hospital testified that private duty nurses were not employees of the hospital and that there was available to all patients entering the hospital a descriptive brochure which contained, under the caption "Private Nurses", the following

paragraph: "If you or your physician would like to employ the services of a private duty nurse, your doctor will make the necessary arrangements. These nurses are *not* Lenox Hill employees. However, for your convenience, charges will be included on your hospital bill." (Emphasis in original.) Defendant's position, in short, was that plaintiff, and not the hospital, had engaged the nurses, and that the hospital set forth their charges on its bill merely to facilitate payment by plaintiff of her indebtedness to them. To contradict this position, to show that the obligation to pay a private duty nurse rested on the hospital and not on the patient, plaintiff brought out by cross-examination of the accounts manager that such a nurse was paid the amount of the charges by the hospital when the patient failed to pay the hospital bill.

I agree with Appellate Term that the policy provision is unambiguous. That was the view of both attorneys at the trial, who were also in accord that "charge" meant, as plaintiff's attorney phrased it, "simply an imposition of a debt." But whether the charge was made by the hospital, or by the private duty nurses through the medium of the hospital, was in my opinion an issue of fact requiring submission to the jury and by that body not unreasonably decided.

Accordingly, I must dissent from the affirmance of the determination appealed from, and vote to reverse it and reinstate the judgment entered upon the verdict.

CAPOZZOLI and TILZER, JJ., concur with McGIVERN, J.; BOTEIN, P. J., dissents in opinion, in which STEVENS, J., concurs.

Determination affirmed with $50 costs and disbursements to the respondent.