**VICTORY CONTAINER CORPORA-TION, and Warrensburg Paper & Board Corp., Plaintiffs,**

v.

**SPHERE INSURANCE COMPANY, Excess Insurance Company, South Eastern Fidelity Insurance Company, and Foremost Insurance Company, Defendants.**

**No. 77 Civ. 1370 (CHT).**

United States District Court,
S. D. New York.

March 17, 1978.

Berman & Zivyak, New York City, for plaintiffs.

Levy, Bivona & Cohen, New York City, for defendants Sphere Ins. Co. and Excess Ins. Co.

**MEMORANDUM**

TENNEY, District Judge.

Plaintiffs Victory Container Corporation and Warrensburg Paper & Board Corp. have moved for partial summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure against defendants Sphere Insurance Company and Excess Insurance Company on the issue of liability under an insurance policy issued by defendants.[1] Jurisdiction is based upon diversity. 28 U.S.C. § 1332. Plaintiffs claim that by the terms of the policy defendants' total liability is $490,000. Sphere and Excess oppose the motion, asserting that maximum liability is $250,000. For the reasons that follow, plaintiffs' motion for partial summary judgment is granted.

The Warrensburg Paper Mill was one of a number of locations covered to plaintiffs' benefit by a policy issued by defendants in December 1975 through their General Agents, Universal Excess Company and Inram Corporation. The policy provided the primary layer of coverage against property damage and business interruption losses from flood and other perils.[2] As a result of a flood occurring in April 1976, the Mill property was damaged. Although there were negotiations concerning the claimed damages, plaintiffs have been unable to recover under the policy. Plaintiffs now claim property damage of $250,000 and business interruption loss of $240,000, for a total of $490,000. Defendants both dispute the damages and assert as an affirmative defense that the terms of the policy limit their liability for loss occasioned by the flood to a total of $250,000.[3]

1. Plaintiffs move in the alternative, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike defendants' second affirmative defense, which points to the language in the policy cover note as establishing that maximum coverage is $250,000. Due to the disposition of the summary judgment motion, it is unnecessary to consider plaintiffs' alternative motion.

2. Additional insurance coverage was allegedly provided by South Eastern Fidelity Insurance Company and Foremost Insurance Company, defendants in this action although not involved in the instant motion.

3. Defendants also argue that the motion is premature and inappropriate because their third affirmative defense "places in issue the question of the proof of loss." Defendants' Memorandum In Opposition 4. Defendants' third affirmative defense states "[t]hat in the event defendants are obligated to provide coverage in an amount exceeding the $250,000 aggregate

By its terms the policy provides a maximum coverage of $500,000 "in any one loss casualty or disaster, which limit shall be subject to further reduction by any sub-limit appearing herein in respect of any peril or form of coverage, and shall be subject, further, to any reduced limit of liability designated in any location schedule attached hereto." The Declaration Form, relied on by both plaintiffs and defendants, names Victory as the insured and states, in relevant part:

LOCATION: As per Location Schedule attached,

PROPERTY LIMITS: * * * * * *

B. Flood – Aggregate limit of $250,000.

* * * * * *

DEDUCTIBLE: A. Flood – $2,500.

B. All other perils – $1,000.

VALUED BUSINESS INTERRUPTION: This clause supersedes Gross Earnings Form # 140 with respect to the evaluation of a Business Interruption Loss.

At each location where Business Interruption is insured, it is agreed that the amount of loss for each . . . day . . . shall be the Per Diem amount specified in the Location Schedule . . . but not to exceed the Maximum specified in the Location Schedule in any one loss.

The Gross Earnings Endorsement (Form # 140), made a part of the policy, broadens the policy to cover loss "from necessary interruption of business caused by the perils insured against damaging or destroying . . . real or personal property (except finished stock) at the premises described . . . , subject to the limit of liability specified . . . for the premises at which the damage or destruction occurs." The Location Schedule to which the maximum coverage statement and Declaration Form refer states, with respect to the Mill property:

| BUILDING | CONTENTS | BLANKET PROPERTY | BUSINESS INTERRUPTION PER DIEM | BUSINESS INTERRUPTION MAXIMUM | TOTAL |
|---|---|---|---|---|---|
| $600,000 | $1,550,000 | $2,150,000 | $3,000 | $240,000 | $2,390,000 |

The sole issue now before the Court is the maximum extent of coverage for which the insurer is liable for both the property damage and business interruption losses on this insurance policy.[4] Resolution of the controversy turns upon the interpretation of the written contract which, in turn, involves a determination of the intent of the parties as it is expressed by the language used. *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973); *Sperling v. Great American Indemnity Co.*, 7 N.Y.2d 442, 199 N.Y. S.2d 465, 166 N.E.2d 482 (1960); *Raleigh*

limit of the policy with respect to the peril of flood, the plaintiffs failed and neglected to file a detailed proof of loss with the defendants." It does not appear, however, that defendants wish to argue that plaintiffs' alleged failure to file "a detailed proof of loss" discharged their obligation under the policy but only that they "have raised a substantial defense in that nothing has been determined as to damages." *Id.* at 1. Defendants do admit "plaintiff submitted a proported [sic] document as its proof of loss and . . . refers to said document for its content, meaning and interpretation." Defendants' Verified Answer ¶ 20. Further, defendants admit that damage occurred as a result of the April flood. *Id.* ¶ 13. Under Rule 56(c), "summary judgment . . . may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

4. New York law is to be applied to the instant controversy. The insured property is located in New York and the policy was issued through defendants' New York agents. New York Insurance Law § 143(2) (McKinney 1966) provides, in relevant part:

No contract or policy of insurance delivered or issued for delivery in this state shall provide that the rights or obligations of the insured or any person rightfully claiming thereunder shall, with respect . . . to policies of insurance upon property then in this state, . . . be governed by the laws of any state or country other than this state.

*Associates v. Henry,* 302 N.Y. 467, 99 N.E.2d 289 (1951). It is for the Court to decide whether a contract is ambiguous and if it finds that it is not, to interpret the contract as a matter of law. *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957). A contract presents an ambiguity when the "language is susceptible of at least two fairly reasonable interpretations." *Aetna Casualty & Surety Co. v..Giesow,* 412 F.2d 468, 471 (2d Cir. 1969). *Accord, Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975); *Union Insurance Society of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946 (2d Cir. 1965). However, "[m]ere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact." *Bethlehem Steel Co. v. Turner Construction Co., supra,* 2 N.Y.2d at 460, 161 N.Y.S.2d at 93, 141 N.E.2d at 593. In the opinion of this Court the instant contract of insurance is unambiguous in that the Declaration Form, Location Schedule, and the language of the policy as a whole establish that separate independent limitations exist for the property and business interruption coverage.

Initially, the Court notes that business interruption and property damage represent distinct forms of coverage. *See, e. g., Northwestern States Portland Cement Co. v. Hartford Fire Insurance Co.,* 360 F.2d 531 (8th Cir. 1966); *Gordon Chemical Co. v. Aetna Casualty & Surety Co.,* 358 Mass. 632, 266 N.E.2d 653 (1971); *Michael v. Prussian National Insurance Co.,* 171 N.Y. 25, 63 N.E. 810 (1902); 11 *Couch on Insurance* §§ 42:401–07 (2d ed. 1963 & Supp.1977). In *Jarvis Towing & Transportation Corp. v. Aetna Insurance Co.,* 72 N.Y.S.2d 696, 697 (Sup.Ct.N.Y.Co.), *aff'd,* 273 App.Div. 853, 77 N.Y.S.2d 260 (1st Dep't 1947), *rev'd on other grounds,* 298 N.Y. 280, 82 N.E.2d 577 (1948), the court stated that "[l]oss of use is a separate interest which may be specifically insured, but is not covered by a general

property loss or damage, fire or marine insurance policy." *Accord, Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Insurance Co.,* 419 F.2d 247 (6th Cir. 1969); *Stephan v. Allstate Insurance Co.,* 26 Ariz.App. 367, 548 P.2d 1179 (1976). In the instant case, it is clear that both types of interest are covered by the single policy. The policy itself points to this distinction by its use of the separate Gross Earnings Endorsement to provide business interruption coverage. Notwithstanding the separate treatment, however, defendants maintain that the coverage for business interruption is limited by the aggregate flood limit in the Declaration Form. Undoubtedly, had the Declaration Form contained a provision denominated "Flood Limit," the insurers' liability would indeed be limited for all types of loss caused by flood. However, while defendants characterize the stipulated $250,000 limit as aggregate flood limit, they ignore the specific heading which they utilized to characterize the flood limit, *i. e.,* "Property Limits." The specific words of this heading, coupled with the Location Schedule and the language employed through the policy compel a decision at odds with defendants' contention.

Defendants' interpretation of the contract requires that "business interruption" be included within the meaning of "property" in the Declaration Form for purposes of limited liability for flood losses. However, the Court must look to the entire contract to discern the meaning of the language used, *Murray Oil Products, Inc. v. Royal Exchange Assurance Co.,* 21 N.Y.2d 440, 288 N.Y.S.2d 618, 235 N.E.2d 762 (1968), and thus viewed the contract clearly covers two separately defined interests. This distinction is supported not only by the fact that the policy was specifically extended by the Gross Earnings Endorsement, but also by differences in the nature of the coverage referred to in distinct sections of the policy. Buildings and contents are listed on the Replacement Cost Coverage Endorsement, and the various property damage portions of the policy refer to replacement and repair of physical property.[5] In contrast the Gross Earnings Endorsement, while condi-

---

**5.** The property damage portion does provide an extension of coverage for "extra expense" whereby the

insured may apply up to $1,000 or the limit of liability specified for Coverage A—Building(s) to cover the necessary extra expense

tioning coverage on loss due to damage to physical property from a covered peril, refers to loss resulting from interference with business operations. Courts have found that this kind of endorsement covers the value of the business operations and not the value of material property. *See, e. g., Michael v. Prussian National Insurance Co., supra; Gordon Chemical Co. v. Aetna Casualty & Surety Co., supra.*

Additionally, the Declaration Form and Location Schedule indicate that the property limit of $250,000 does not modify and limit business interruption coverage. Looking first to the Location Schedule, the Court notes that value is separately assigned to building and contents and that these two subcategories are added together under the heading "Blanket Property." The Schedule then goes on to make a separate computation for business interruption, which is then added to the property value to give the total figure. Thus, by the breakdown in the Location Schedule itself, the two interests are accorded distinct treatment. Not only is there no indication that all insured interests are included within the term "property," the two categories are clearly separate. The Court also notes that there is a similar separation in the Declaration Form itself. The suggested flood-damage limit of $250,000 is found under the heading "Property Limits." Once again, however, there is no indication on this form that business interruption losses are to be included within the limitation for "property," for they are discussed under their own separate heading. Further, the form specifically refers to business interruption coverage and provides for its valuation. The provision for "Valued Business Interruption" which states that the amount

of a business interruption loss may not exceed the maximum specified in the Location Schedule, is separated from the "Property Limits" provision and parallel to it. This provision incorporates by reference the applicable portion of the Location Schedule but makes no reference to the "Property Limits" section and provides nothing by way of limitation on the amount of recovery for losses due to flood.

Although the Declaration Form does not expressly provide that the "Property Limits" provision modifies and limits business interruption coverage, defendants maintain that the maximum coverage statement and Extensions of Coverage clause provide the necessary language of limitation. However, "[w]hen the terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense." *McGrail v. Equitable Life Assurance Society,* 292 N.Y. 419, 424, 55 N.E.2d 483, 486 (1944). *Accord, State Farm Mutual Automobile Insurance Co. v. Westlake,* 35 N.Y.2d 587, 364 N.Y.S.2d 482, 324 N.E.2d 137 (1974); *Morgan v. Greater New York Taxpayers Insurance Ass'n,* 305 N.Y. 243, 112 N.E.2d 273 (1953); *Gans v. Aetna Life Insurance Co.,* 214 N.Y. 326, 108 N.E. 443 (1915). Furthermore, "interpretation of a clause in a policy of insurance is to be determined by what it means to an ordinary businessman." *Whiteside v. Insurance Co. of Pennsylvania,* 274 App.Div. 36, 38, 79 N.Y.S.2d 715, 717 (1st Dep't 1948). *Accord, Morgan v. Greater New York Taxpayers Insurance Ass'n, supra; Tyroler v. Continental Casualty Co.,* 31 A.D.2d 8, 294 N.Y. S.2d 373 (1st Dep't 1968), *aff'd,* 25 N.Y.2d 710, 307 N.Y.S.2d 219, 255 N.E.2d 560 (1969). Bearing these principles in mind, the Court considers defendants' interpretation without support in the policy itself.

incurred by the insured in order to continue as nearly as practicable the normal operations of the insured's business immediately following damage by a peril not otherwise excluded under this form to the buildings or personal property situated at the described locations.

The extension continues and states:

The Company shall not be liable under this Extension of Coverage for:

1. loss of income.
2. the cost of repairing or replacing any of the described property . . . except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing the total amount of extra expense. . . .
3. any other consequential or remote loss.

Specifically, the maximum coverage statement can be found to provide, without straining its language, that the $500,000 maximum coverage allowed under the policy is subject to sub-limits of liability "in respect of any peril or form of coverage" and is further limited by the amounts specified in the Location Schedule. If a sub-limit is applicable to a loss, the amount of the sub-limit establishes the limit of liability unless the amount specified in the Location Schedule is less than the sub-limit, in which case policy coverage is limited to the amount in the Schedule. In any event, the coverage is limited to a total maximum of $500,000. However, the maximum coverage statement provides no assistance in determining what sub-limit is applicable to a loss, since it merely states that sub-limits "in respect of any peril or form of coverage" subject the maximum coverage to reduction.[6] Thus, it is difficult to see how this statement can be read as providing the necessary connection on the Declaration Form between property limits and business interruption, as defendants contend.

Similarly, the Extensions of Coverage clause, relied on by defendants, sheds no clarifying light on the specific scope of the various limitations.[7] This clause limits the liability of the insurer for loss in any one occurrence, including losses under any extensions of coverage, to the limit specified in the basic categories of coverage involved. The clause further provides that the total loss under the extensions provided with any form cannot exceed the largest amount under any one form. However, the Gross Earnings Endorsement is not an "extension of coverage," for that term is used in the policy to refer to specific extensions of one or more of the primary types of coverage already provided by the underlying policy.[8] The Gross Earnings Endorsement, however, broadens the policy to insure against a *new* type of loss—that due to business interruption. Moreover, the Gross Earnings Endorsement itself demonstrates the true meaning of an "extension of coverage," for it also contains an extension of the business loss coverage provided therein.[9] Clearly, then, the two provisions relied on do not support defendants' contention that the policy is to be interpreted as limiting business interruption coverage to the amount specified under property limits for damage caused by flood.

Defendants further maintain that plaintiffs, by bringing this action, are attempting to "stack" policies. Defendants' position is apparently based on the assumption

**6.** No ambiguity is presented by the maximum coverage statement as applicable sub-limits are *ascertainable in other parts of the policy.*

**7.** The Extensions of Coverage clause reads, in relevant part:
The liability of the Company for loss in any one occurrence, including loss under these Extensions of Coverage, shall not exceed the *limit of liability specified for the coverages being extended.* The total amount recoverable under the Extensions of Coverage in this form and Extensions of Coverage in any other form made a part of this policy are not cumulative and shall not exceed the largest amount recoverable under any single form made a part of this policy. . . .

**8.** An example of the type of extension contemplated by the "extensions of coverage" clause is provided in a copy of the provision submitted by defendants:
A. Newly Acquired Property: The insured *may apply up to* 10%, *but not exceeding* $10,000, of the limit of liability specified for Coverage B Personal Property to cover direct loss . . . by a peril not otherwise excluded to such property at any location . .

acquired by the insured . . . elsewhere than at the described locations . . . . *This coverage shall cease 30 days from the date of such acquisition or on the date values at such locations are reported to the Company, or on the expiration date of the policy,* whichever occurs first. . . .

**9.** An extension appearing in the copy of the *Gross Earnings Endorsement* submitted by plaintiffs provides permission for alterations and construction and further states:
This endorsement is extended to cover, subject to all its provisions and stipulations, loss resulting from damage to or destruction of such alterations, additions or new buildings . . . provided that, in the event of damage to or destruction of such property . . so as to delay commencement of business operations of the insured, the length of time for which the Company shall be liable shall be determined as otherwise provided herein but such determined length of time shall be applied and the loss calculated from the date that business operations would have begun . . . .

that plaintiffs' interpretation requires treating property damage and business interruption coverage as distinct policies rather than as distinct types of coverage contained in a single policy. Thus, defendants rely on several cases. In *Allied Grand Doll Mfg. Co. v. Globe Indemnity Co.,* 15 A.D.2d 901, 225 N.Y.S.2d 595 (1st Dep't 1962), the insurance policy limited liability to $15,000 for each accident; the issue was whether one or several accidents had occurred within the meaning of the policy. *West Food Stores, Inc. v. Hartford Fire Insurance Co.,* 417 F.2d 1219 (7th Cir. 1969), concerned a policy which covered various business locations and which limited liability to a specified amount for each location. The plaintiff maintained that the limit to be applied to the damage at one location was the total amount specified for all locations rather than the amount specified for the location damaged. The court rejected the plaintiff's argument and held that the clauses in question unambiguously established liability only to the extent specified for the particular location. In *Oller v. New York Fire Insurance Co.,* 339 Ill.App. 461, 90 N.E.2d 241 (Ct.App.1950), a $2,500 five-year fire insurance policy was extended to cover loss due to windstorm. The extension endorsement specifically stated that it did not increase the amount of insurance provided by the policy. When the insured premises were damaged on two separate occasions by different perils, the plaintiff asserted that the endorsement was an additional policy which extended the insurer's liability to $2,500 for each loss. The court, however, found that the unambiguous language of the endorsement established that there was, in fact, one policy and that $2,500 was the maximum amount recoverable for any loss or series of losses.

In the instant case, however, plaintiffs do not attempt to maintain that liability is predicated upon the existence of separate policies, total value of all locations or separate occurrences causing damage nor does their position require such an interpretation. Indeed, plaintiffs concede that the two forms of coverage are contained within a single policy and that the combined loss

recovery cannot exceed that policy's overall recovery limit of $500,000.

Defendants also argue that the case presents a difficult and "novel" legal question and that, therefore, "factual questions such as previous coverage and parties' intent may require a fuller development of the facts." However, defendants give no indication of the material upon which they rely in asserting the existence of a factual question. They have presented no extrinsic material which would bear on the question of parties' intent, and there is no indication of the terms of previous coverage or whether, in fact, there had been previous coverage. Defendants have merely relied on general assertions, legal arguments and conclusions of law. Such opposition is not sufficient to defeat a motion for summary judgment where the moving party would otherwise be entitled to judgment as a matter of law. "[T]he rule requires that the opposing party present some evidence which supports the bald assertion that there is a dispute." *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir. 1972). *Accord, Dressler v. MV Sandpiper,* 331 F.2d 130 (2d Cir. 1964); *Engl v. Aetna Life Insurance Co.,* 139 F.2d 469 (2d Cir. 1943). Additionally, extrinsic evidence may not be considered when the contract terms are unambiguous. *Bethlehem Steel Co. v. Turner Construction Co., supra.*

As has been indicated, defendants' position is not supported by the language of the policy. The only connection between business interruption coverage and property damage coverage is that interruption of business must be due to damage to physical property from one of the covered perils. As the policy clearly separates and defines the two types of coverage, it is unreasonable to read the Declaration Form provision for property limits as limiting business interruption coverage. *Cf. Hartol Products Corp. v. Prudential Insurance Co.,* 290 N.Y. 44, 48, 47 N.E.2d 687, 689 (1943) ("It is hardly to be supposed that the defendant . . . would use the word in one sense and with a particular and peculiar meaning in the exclusion clause . . . and in an entirely different sense and different mean-

ing . . . in every other spot . . . in which the word is used.").

Defendants, in effect, seek to superimpose the words "Flood Limit" on to the heading "Property Limits" to establish liability at $250,000 for all types of loss caused by flood. Further, added to the business interruption provision would be an additional phrase stating that the amount specified in the Location Schedule is further limited by the property limits. If defendants had intended to so limit business interruption coverage, explicit language to that effect could and should have been employed. *Greaves v. Public Service Mutual Insurance Co.*, 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959); *Tyroler v. Continental Casualty Co., supra.* This Court cannot read the language into the policy as a "court is not at liberty to inject a clause into the policy or to make a new contract for the protection of the insurance company." *Taylor v. United States Casualty Co.*, 269 N.Y. 360, 363, 199 N.E. 620, 621 (1936); *cf. Security Options Corp. v. Devilliers Nuclear Corp.*, 472 F.2d 844, 846 (2d Cir. 1972) (The court cannot substitute "an unfounded meaning for that plainly evidenced by the writing of the parties.").

Summary judgment is appropriate when the Court is faced with an unambiguous contract, since such a contract presents no issues of fact requiring trial. *See Security Options Corp. v. Devilliers Nuclear Corp., supra; Lemelson v. Ideal Toy Corp.*, 408 F.2d 860 (2d Cir. 1969); *New Wrinkle, Inc. v. John L. Armitage & Co.*, 238 F.2d 753 (3d Cir. 1956); *Fidelity and Casualty Co. of New York v. Copeland*, 277 F.Supp. 222 (N.D.Fla.1967). The Court has determined that the relevant provisions of the contract of insurance are unambiguous and clearly show that $250,000 is the maximum coverage provided for property damage caused by flood and that $240,000 is the maximum coverage provided for business interruption losses at the Warrensburg Mill.[10] The actual amount of damages remains to be determined at trial. For the reasons stated, plaintiffs' motion for partial summary

judgment on the question of defendants' maximum liability is hereby granted.

So ordered.

---

**10.** The total coverage for which the insurer is liable is subject to the $2,500 deductible provision on the Declaration Form. Plaintiffs do not argue against the validity or contest the meaning of this provision, and it is to be applied against the claim.