GILBERT/ROBINSON, INCORPORAT-ED, et al., Plaintiffs-Appellants,

v.

SEQUOIA INSURANCE COMPANY, Defendant-Respondent.

No. WD 33719.

Missouri Court of Appeals, Western District.

May 24, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 2, 1983.

H. Fred Northcraft and James E. Kelley, Jr. of Smith, Gill, Fisher & Butts, Inc., Kansas City, for plaintiffs-appellants.

Darrell L. Havener and William T. Smith III of Watson, Ess, Marshall & Enggas, Kansas City, for defendant-respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is an action to recover for business interruption losses under an insurance policy. The trial court sustained the insurer's motion for summary judgment. The judgment is affirmed.

Both parties sought summary judgment. From the affidavits, pleadings and documentary evidence upon the record, the following factual summary is developed. Any additional pertinent facts are disclosed and included within the remaining portions of this opinion where applicable.

Appellants, plaintiffs below, are the corporate owners and operators of four restaurants in the Plaza area of Kansas City, Missouri. Respondent, defendant below, was the insurance carrier for plaintiffs at the time of the alleged loss. On September 12, 1977, a flood struck the Plaza area. All four restaurants owned and operated by plaintiffs were damaged by the flood. The policy under question in this proceeding was issued on January 16, 1976, and was in full force and effect on September 12, 1977.

All four restaurants were closed for varied periods of time. The defendant paid, and plaintiffs accepted the payment of, $100,000 under the policy subject to a reservation of rights by both parties under the terms of the policy. Plaintiffs then filed amended proofs of loss, claiming a sum of $282,528 as losses for all four restaurants for business interruption. Defendant refused further payment, claiming that the maximum amount of its liability under the policy was $100,000, which had been paid.

This action was filed and plaintiffs alleged in their petition that the policy insured plaintiffs' property, including business interruption losses; that said losses were sustained, that calculations per restaurant were made for such losses according to the formula within the policy, including damages for vexatious delay. This latter claim has been abandoned on this appeal.

By affidavit in support of their motion for summary judgment (with the policy attached), in addition to other general and applicable allegations, plaintiffs set forth with particularity the dates of closing for each restaurant and the calculated losses claimed due plaintiffs for and as a result of business interruption. Plaintiffs claimed a right of recovery directly from the terms of the policy, or in the alternative, that the terms of the policy were ambiguous con-

cerning business interruption; and as a result of such ambiguity, the policy should be construed in plaintiffs' favor and against defendant.

Defendant has maintained the position that the policy is unambiguous; that payment of the $100,000 was pursuant to a flood endorsement to the policy; that the payment exhausted coverage for the flood and that as insurer, it had paid the total amount due under the policy.

The trial court entered summary judgment for the defendant insurer and this appeal followed.

The dispute herein centers upon five parts or sections of the policy identified as MLB–140, MLB–115, MLB–101, FP–1 and FP–10. It is beyond the scope and purpose of this opinion to recite verbatim all of these lengthy policy provisions, so where that is not done, reference is simply made thereto. MLB–140, MLB–115, and MLB–101 are basic policy coverage sections of the policy. FP–1 and FP–10 are endorsements to the policy.

MLB–140 is captioned "Gross Earnings Endorsement". MLB–140 contains a reference, "Per endorsement FP–1 attached to this contract." Under paragraph 1 of MLB–140, the following is found:

"1. Subject to all the provisions and stipulations otherwise applicable to Section I of this policy, except the Coinsurance Clause and the Loss Deductible Clauses, this policy is extended to insure against loss resulting directly from necessary interruption of business caused by the perils insured against damaging or destroying during the policy period, real or personal property (except finished stock) at the premises described in this endorsement, subject to the limit of liability specified above for the premises at which the damage or destruction occurs. For the purposes of this insurance, 'perils insured against' shall mean the perils, as defined and limited in the forms and endorsements listed above, for each premises specified and also subject to the provisions of this endorsement."

MLB–101 is captioned, "SMP Special Building Form—Section 1—Property Coverage." MLB–101 carries an exclusion for interior building flood damage (III, subsection G).

MLB–115 is captioned, "Special Property Form-Section 1 Property Coverage." MLB 115 carries an exclusion for flood damage. (VII C.2.) It references endorsement FP–1 under the schedule of limits of liability.

FP–1 is an endorsement to the policy, consisting of two legal-sized sheets listing "Locations, Limits, and Coverages" as to plaintiffs' properties. It also contains a co-insurance statement, plus applicable deductible and business interruption co-insurance provisions as per each of plaintiffs' properties. As regards the four properties in this proceeding, FP–1 contains limits for business interruption as follows: (1) $100,000 (50% co-insurance); (2) $250,000 (50% co-insurance); (3) $375,000 (50% co-insurance) and (4) $300,000 (50% co-insurance). FP–1 also outlines the limits of coverage for comprehensive general liability, liquor liability, neon signs, fine arts, cargo truck, medical payments, and crime coverage.

FP–10 is an endorsement to the policy captioned, "Flood and Earthquake Endorsement". The remainder of FP–10 reads as follows:

"This Company shall not be liable for more than the limits stated in the schedule attached to this policy, these limits being maximum any one loss except for flood and earthquake which covered subject to a limit of $25,000 at any one location.

The term FLOOD shall mean waves, tides, or tidal water, the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or similar bodies of water whether driven by wind or not."

As noted above, flood damage was excluded from the basic policy as per MLB–101 and MLB–115. FP–10 was an endorsement attached to the policy which, by its terms, removes the flood damage exclusion.

On this appeal, plaintiffs set forth three points, which in summary charge the trial

court erred in entering summary judgment for the defendant because: (1) when MLB–140 is read together with FP–1 and other relevant portions of the policy, the policy affords business interruption coverage arising from flood damage up to the dollar amounts set forth in FP–1 "and at least and in the alternative the policy does not state otherwise without ambiguity"; (2) FP–10 itself is internally ambiguous as to whether there is per premises flood coverage up to $25,000 for building contents and additionally, up to $25,000 for business interruption, or whether contents and business interruption are covered only up to $25,000 in the aggregate for each of the premises, and as a result, defendant is liable for up to an additional $25,000 per each of the premises for business interruption losses; and (3) the trial court erred in giving weight to the deposition testimony of one Pat Mullen in its order and judgment because such testimony was not material or relevant to the issues presented by the cross-motions for summary judgment.

In support of its first point, plaintiffs have fragmented their argument into eight subportions.

Under their first subpoint, plaintiffs submit nothing more than an exhaustive and thorough recapitulation of cited authority in support of the general rule that if an insurance contract by its terms is ambiguous, it must be construed against the insurer. Continuing, plaintiffs point out that the "face sheet" of the policy provides six separate property coverages designated Section I "property coverage". Under Division 1, there is coverage for buildings, personal property (or contents of buildings), and for business interruption. The three remaining coverages are under Division 2 and include neon signs, fine arts, and motor truck cargo. Plaintiffs suggest that with respect to these coverages, five are categories of properties covered and constitute, in the aggregate, the real and personal property within the property coverages of the policy. Plaintiff then contends that the remaining or sixth coverage, business interruption, is not for loss due to property damage as such but for loss resulting from interference with business operations.

Plaintiffs then direct attention to paragraph 1 of MLB–140 and emphasize portions thereof. At this juncture, it is perhaps wise to again recite paragraph 1 of MLB–140 with the portions emphasized by plaintiffs:

"*Subject to all the provisions and stipulations otherwise applicable to Section I of this policy,* except the Coinsurance Clause and the Loss Deductible Clauses, this policy is *extended* to insure against loss resulting directly from necessary interruption of business *caused by the perils insured against* damaging ... *real or personal property* ... at the premises described in this endorsement, *subject to the limit of liability specified above* for the premises at which the damage ... occurs. For the purposes of *this insurance* 'perils insured against' shall mean the perils, as defined and limited *in the forms and endorsements listed above* for each premises specified ..." (Emphasis added)

Plaintiffs further direct attention to the fact that stamped upon MLB–140 is the reference, "Per Endorsement FP–1 attached to This Contract". Plaintiffs then suggest in (a) that paragraph 1 of MLB–140 and the specific inclusion of FP–1 within MLB–140 creates coverage for business interruption losses separate and apart from the basic insuring clauses of MLB–101 and MLB–115, or alternatively, allows for such a conclusion and thus an ambiguity in the policy exists.

■ Plaintiffs' contention under this first subpoint fails for two reasons. In the first instance, MLB–140 by its terms does not create separate coverage for business interruption losses and does not stand alone. MLB–140 does not contain provisions which are requisite to its being construed as an independent policy or insuring clause. Its terms do not include extension of coverage, nor are its terms defined (i.e.) "peril insured against" therein, but rather, such definitions are, by reference to other sections and endorsements, within the remainder of the

policy. In addition, MLB–140 contains a so-called "subject to" clause, and the second page of FP–1 provides that it is applicable subject to "all the terms and conditions of this policy including forms and endorsements made a part thereof." There is no merit to (a) of point (1) regarding either the express language of MLB–140 or FP–1, nor by the language thereof is there any ambiguity created thereby.

■ Continuing to (b) of point (1), plaintiffs point out that within FP–1, the heading thereof, the term "All Risk" is found and is not otherwise qualified or limited by the terms of FP–1. Plaintiffs conclude from this that no risks are excluded and flood is included. In conjunction with this conclusion, plaintiffs further contend that MLB–101 contains a definition of "all risks" and by that definition, some risks are excluded (flood damage). From their original conclusion relative to FP–1 and reference to MLB–101 regarding "all risks", plaintiffs contend "that coverage reasonably unambiguously afforded for flood (as encompassed within "All Risk") in FP–1 has been sought to be redefined and limited in MLB–101 *for buildings only*." Plaintiffs then suggest the same conclusion for MLB–101 relative to contents coverage. Plaintiffs merely submit their conclusion that by use of the term "All Risks", FP–1 includes business interruption loss occasioned by flood, exclusive of the remainder of the policy. Such conclusion is not permissible in light of the "subject to clause" of MLB–140 to which FP–1 is an endorsement, and further not permissible because of the wording within page two of FP–1 which renders FP–1 applicable to all other forms and endorsements of the policy. There is no merit to subpoint (b) of point (1).

■ Plaintiffs then assert in subpoint (c) of point (1) that by the terms of MLB–140, business interruption is a separate coverage. It has already been noted above that MLB–140 fails to contain requisite provisions allowing MLB–140 to arise to a separate insuring clause or policy and by its terms, it is obvious that it is interrelated and dependent upon other provisions of the policy.

Plaintiffs merely make the broad assertion, "Business interruption ... is generally regarded as a separate form of coverage and insurance." Further reference is generally made to the language of MLB–140 providing the policy is "extended to insure" against business interruption losses. Plaintiffs suggest this question is ruled by *Victory Container Corp. v. Sphere Ins. Co.,* 448 F.Supp. 1043 (S.D.N.Y.1978). Within this context, plaintiffs suggest that MLB–140 is a separate policy. The court in *Victory* did not hold that such a similar clause was a separate and self-containing policy as urged by plaintiff, but rather, it ruled that such a clause within a policy insured "against a new type of loss". *Victory* at 1047. *Victory* neither supports plaintiffs' contention nor does it control. It has already been noted that MLB–140, inclusive of FP–1 and by the terms thereof, prescribes the limits for business interruption losses subject to remaining terms and endorsements of the policy. The coverage for business interruption losses is prescribed by the face of the policy interrelated with MLB–101, MLB–115, MLB–140, with the FP–1 endorsement and as observed infra, subject to FP–10. There is no merit to subpoint (c) of point (1).

Under subpoint (d) of point (1), plaintiffs posture the same argument found under subpoint (c), only this time, relative to the expressed term "perils insured against." There is no reason to restate the analysis set forth under (c) above and it suffices to declare that there is no merit to subpoint (d) of point (1) for the same reasons.

■ Under subpoint (e) of point (1), plaintiffs contend that the "subject to" clause within MLB–140 does not make FP–10 applicable to business interruption losses coverage. Plaintiffs posture their argument upon this point by assuming that the purpose of FP–10 is to remove flood and earthquake exclusions for buildings and contents coverage only and has no application to business interruption coverage. Plaintiffs then assert that FP–10 should be construed to relate only to property coverages for buildings and contents. Plaintiffs'

conclusion is reached by asserting that MLB–101 and MLB–115 do exclude flood and earthquake coverages for building and contents, but provide no such exclusion for business interruption losses. The defect in plaintiffs' argument is that the "subject to" clause makes MLB–140 applicable within MLB–101 and MLB–115. In those insuring clauses, flood is excluded. FP–10, as an endorsement, then eliminates the flood exclusion within MLB–101 and MLB–115 and provides a maximum limit of liability ($25,000) for damage arising from flood at each of plaintiffs' premises. The "subject to" clause, although the contrary is urged by plaintiffs, cannot be ignored as it is an integral part of the policy and certainly within MLB–140. By the application of the "subject to" clause, the result is inescapable that FP–10 then becomes a limiting endorsement, relative to business interruption losses, arising as a result of flood, even though neither MLB–101 nor MLB–115 expressly and originally exclude business interruption losses. FP–10 as an endorsement provides that flood is a peril insured against by deleting the original exclusion for flood coverage. Stated another way, FP–10 provides coverage for loss to a total maximum of $25,000 per premise for all damages arising as a result of flood. There is no merit to subpoint (e) to point (1).

■ Further, in their argument under subpoint (f) to point (1), plaintiffs contend that if the "subject to" clause is found applicable to business interruption, then the clause itself is ambiguous. It is suggested that the "subject to" clause is capable of two reasonable meanings. The first, as suggested by plaintiffs, is that it "is to protect the insurer against the business interruption coverage afforded by MLB–140 being construed to alter, enlarge, or affect the scope of other property coverages, such as to buildings or contents (where for example, flood is an excluded risk in the first instance but covered to a limited extent by virtue of FP–10)".

Plaintiffs further assert "using that example, the clause means nothing in the extension of coverage for business interrup-

tion (with high dollar limits) shall be construed to afford more than $25,000 coverage per occurrence to a 'building' for flood. If that is the appropriate meaning—and plaintiffs contend that the words are reasonably subject to that interpretation, among others—then MLB–140 means and says that business interruption losses for flood are covered up to the stated location limits of the FP–1 schedule subject to MLB–140 not being read to expand building or contents coverage in any way." Contrasted with the foregoing, plaintiffs suggest that the "subject to" clause permits yet another reasonable meaning. It is asserted this second meaning is "that it is an attempt to incorporate generally among many and other diverse policy provisions, the language of endorsement FP–10 and make the FP–10 language limiting flood coverage to $25,000 per 'loss' per location applicable to a business interruption loss." Plaintiffs contend that this second meaning, if applied, produces the result "that the first two sentences of MLB–140 are self-contradictory with two complete and integral ideas. One is the maximum flood coverage for business interruption loss is as stated in the FP–1 schedule for each location ... and the other is that to the contrary, such loss cannot exceed $25,000."

The defect in plaintiffs' contention and what thus requires a ruling against plaintiffs on this point is the incorrect assumption by plaintiffs that MLB–140 contains flood as a peril insured against. Flood coverage under the policy arises only from and as a result of the FP–10 endorsement. There is no contradiction or ambiguity created by the incorporation or interrelation of MLB–101, MLB–115, MLB–140 and FP–10. No coverage for flood is provided unless FP–10 is applied to the flood exclusions within MLB–101 and MLB–115. It follows then, contrary to plaintiffs' contention, there is no conflict with FP–1 or the wording of MLB–140 by the application of the "subject to" clause. Subpoint (f) to point (1) is without merit.

■ Under their final subpoint (g) to point (1), plaintiffs first reassert the

claimed contradictory positions within MLB–140 (declared above and found meritless under [f] above) and then make general and vague reference to the fact that "one has to look carefully to another portion of the policy to find FP–10 . . . only possibly as well as unspecifically referenced by the subject to clause along with other provisions applicable to the various categories of property coverage." Plaintiffs then direct attention to paragraph 7(b) of MLB–140 which in part declares that the insurer "shall not be liable for more than the limit of liability set forth above for each premise." From this, plaintiffs emphasize reference to FP–1 and the scheduled limits, and conclude that it is those scheduled limits which are the ones applicable to business interruption losses. At the risk of being repetitious, this court points out once again that MLB–140 does not include the perils or risks covered. It is to MLB–101 and MLB–115 that one must look for such coverage. Furthering that inquiry, FP–10, as an endorsement, then deletes the exclusion for flood damage. Plaintiffs incorrectly assume that MLB–140 prescribes the perils or risks covered and from that, conclude that business interruption losses arising from flood are subject exclusively to FP–1. There is no merit to plaintiffs' subpoint (g) to point (1). Point (1), inclusive of subpoints (a), (b), (c), (d), (e), (f), and (g) is, for the reasons set forth herein, found to be meritless and is ruled against plaintiffs.

Under point (2), plaintiffs contend that the FP–10 endorsement is itself internally ambiguous as to whether there is flood coverage for each of the premises up to an aggregate per premise of $25,000, or whether buildings and contents are covered up to $25,000 per premise only, and defendant has an additional liability per premise up to $25,000 for business interruption losses.

It is first noted that this issue is presented for the first time on appeal. Nonetheless, this court ex gratia takes up the question and disposes of it. FP–10 reads:

> "This Company shall not be liable for more than the limits stated in the schedule attached to this policy, these limits

being maximum any one loss except for flood and earthquake which covered subject to a limit of $25,000 at any one location.

The term FLOOD shall mean waves, tides, or tidal water, the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams or similar bodies of water whether driven by wind or not."

Plaintiffs argue that the endorsement is ambiguous because the term "loss" is not defined. Plaintiffs then proceed to argue that "loss" is to be distinguished from "occurrence" and "a 'loss' by contrast, probably is or at least may be a single category of adverse consequences to an insurer subject to one form of coverage resulting from an occurrence . . ." Plaintiffs suggest, in respect to the occurrence in question (i.e., flood), that the loss to building, contents, and business interruption loss for each premise are separately covered to a maximum of $25,000 because $25,000 is the limit for each loss per location. Plaintiffs suggest that the use of the word "limits" in a plural sense, when contrasted with the word "limit" in the singular sense may suggest there are separate and different dollar limits by type of coverage for buildings, contents, and business interruption. It is further contended that the language in FP–10 does not state that for flood, there is maximum coverage of $25,000 per location in the aggregate for building, contents, and business interruption losses.

■ Contrary to plaintiffs' contention, this court concludes that a reading of FP–10 admits only one interpretation. This endorsement is drafted in broad, inclusive, and unambiguous language which denotes if a loss of any sort or type occurs as a result of flood, the defendant-insurer is liable for the payment of a sum not to exceed $25,000 per location, per occurrence. There is nothing within the language of this endorsement, either by express wording or because of ambiguity in the wording thereof which affixes liability upon the insurer in a multiple sense for varied losses. In other words, there is no separate liability created

up to a maximum of $25,000 for buildings separately, then $25,000 for contents separately, and then $25,000 for business interruption. The endorsement prescribes the limit of liability for the insurer in a sum not to exceed $25,000 per location for the total amount of the insured's loss, (i.e.) building, contents and business interruption which occurs or arises because of flood.

There is no merit to plaintiffs' point (2) and it is ruled against them.

█ Under their final point (3), plaintiffs charge that the trial court erred in giving weight to the deposition testimony of Pat Mullen in their order and judgment because said testimony was neither material nor relevant to the issues presented by the cross-motions for summary judgment.

As the record discloses, Pat Mullen was the insurance broker who, on plaintiffs' behalf, secured the policy from the defendant-insurer. She was deposed and counsel for both parties were present. Her deposition was before the trial court and is part of the record on this appeal.

Plaintiffs' contention centers upon the portion of the trial court's order and judgment which states: "Plaintiffs got what they bargained for and, indeed more." Preceding this statement, plaintiffs refer this court to the portion of the trial court's order and judgment which references the fact that Pat Mullen, as insurance broker and legal counsel for plaintiffs, reviewed the policy in general, and FP–10 in particular, and found no question as to the applicability of the limits under FP–10 and/or no ambiguity within the terms of the policy.

Plaintiffs, in their argument of this point, mainly restate their contentions under points (1) and (2) above and more importantly, fail to note in what manner the trial court erred. If plaintiffs' contention is, and it so appears, that the trial court relied upon the deposition testimony as extrinsic evidence to rule the question of policy interpretation, then the record and the order judgment do not support such contention. In its order judgment, the court specifically declared, "The policy in question is not ambiguous."

When read in its entirety, the order judgment is as susceptible to the interpretation that the trial court did not consider any extrinsic evidence relative to its determination of the policy dispute nor did it consider such evidence relative to the interest of the parties, as it is to the interpretation suggested by plaintiffs. Section (2) of the order judgment sets forth with particularity why the trial court concluded, "The policy in question is not ambiguous."

There is no merit to plaintiffs' point (3) and it is ruled against them.

In conclusion, as a broad and admittedly oversimplified summary of the issues in this case, the following sums it up.

Plaintiffs sought, via a broker of its own selection, the placement of insurance for its properties with a carrier who, if possible, could be competitive and perhaps lower in its quoted premium costs. The policy was placed with the defendant insurer. The basic policy excluded coverage for buildings, contents, and business interruption arising from flood. FP–10 was attached to the policy endorsement. FP–10 deleted the exclusion for flood as to buildings, contents and business interruption, and pre-set a maximum of liability for the defendant-insurer at $25,000 per occurrence, per premise for all losses, including business interruption. The defendant-insurer paid the sum of $100,000. ($25,000 per premise for the four that were damaged).

By this action, plaintiffs have suggested three alternatives, which if accepted would, contrary to the terms of the policy, have enlarged the coverage under the policy. Plaintiffs have contended that FP–1 referenced in MLB–140 (business interruption) controls as to the limits of liability. As discussed above, this contention has no merit because in considering the policy and endorsements, the course ultimately leads to endorsement FP–10 which controls. Secondly, plaintiffs contend that the policy and endorsements are subject to more than one interpretation and because of this ambiguity, the policy must be construed against

the defendant insurer. As noted above and in support of the trial court's ruling, no ambiguity exists. Finally, plaintiffs contend that FP–10 is inherently ambiguous, therefore requiring the defendant insured to pay an additional $25,000 per premise for business interruption losses. This too, as observed above, is without merit.

For the reasons set forth herein, the judgment is affirmed.

PRITCHARD, P.J., concurs.

NUGENT, J., dissents in separate dissenting opinion.

NUGENT, Judge, dissenting.

I must register a dissent to the court's disposition of plaintiffs' Point II.

As an alternative to their claims for recovery of the full scheduled limits for each flooded restaurant, plaintiffs in their Point II contend that they are at least entitled to collect up to an additional $25,000 for each restaurant for business interruption loss. They base this contention upon their reading of endorsement FP–10 as "internally ambiguous."

Laying aside for a moment any question of ambiguity, we should first determine whether any reasonable construction of FP–10 would entitle plaintiffs to more than $25,000 for losses at one flooded establishment. If not, even an ambiguity would be of no avail to plaintiffs. To be ambiguous, a policy must be susceptible of two possible interpretations, but unless one such reading favors the insured, he may not recover. *State ex rel. Mills Lumber Co. v. Trimble,* 327 Mo. 899, 39 S.W.2d 355, 358 (1931); *Mathews v. Modern Woodmen of America,* 236 Mo. 326, 139 S.W. 151, 155 (1911).

A fair reading of FP–10 discloses a reasonable construction which favors plaintiffs' position, is in no way ambiguous, and which is the opposite of the construction both urged by the defendant and accepted by the majority opinion.

That "reasonable construction" begins with the fact that Sequoia insured plaintiffs against several kinds of property losses at each restaurant, including the two kinds in this case, loss of business personal property and loss of earnings from business interruption. Undoubtedly, had one of the establishments been damaged or destroyed by fire, plaintiffs could have recovered to policy limits for both personal property loss and for loss of earnings. For each restaurant, FP–10 extended to plaintiffs $25,000 coverage for each such loss caused by flood or earthquake, coverages otherwise excluded under the policy.

FP–10 provides that

[t]his company shall not be liable for more than the limits stated in the schedule attached to this policy, these limits being maximum *any one loss* except for flood and earthquake which covered subject to a limit of $25,000 at any one location. (Emphasis added).

The words "any one loss" indicate that any one of the several losses insured against is now covered to the extent of $25,000 for any one restaurant. The language "at any one location" assures the insured that each restaurant is covered to the same extent any other restaurant is.

Thus, for (a) any loss caused by flood damage to a covered building, (b) any loss arising from flood damage to personal property in a covered building, *and* (c) for any loss caused by flood damage to such personal property resulting in a loss of earnings due to interruption of business, the insurer bound itself to pay up to $25,000, or a possible total exposure from the flood peril of $75,000 for each of the four restaurants.

On the other hand, Sequoia and the majority construe the first paragraph of FP–10 to limit recovery for flood damage to $25,000 "at any one location." If FP–10 said "for all losses" instead of "any one loss," we could not quarrel. Or if it read "for the aggregate loss" we could agree. But that is not what FP–10 says.

The meaning of FP–10 may be determined by application of the "last antecedent" doctrine. That grammatical rule, applicable alike to construction of statutes and contracts, requires that qualifying phrases (such as "at any one location") be

applied to words or phrases immediately preceding and not be construed as extending to or including more remote elements of the sentence. *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo.1983) (en banc); *Norberg v. Montgomery,* 351 Mo. 180, 173 S.W.2d 387, 390 (1943) (en banc); *Elliott v. James Patrick Hauling, Inc.,* 490 S.W.2d 284, 287 (Mo.App.1973); and *Parker v. Green,* 340 S.W.2d 435, 440 (Mo.App.1960).

Under the "last antecedent" doctrine, the phrase "at any one location" will be deemed to modify the noun "limit," its last antecedent, which is found in the subordinate clause. Grammatically, therefore, "any one loss" dominates "at any location." Therefore, for *each* loss "at any one location" the maximum flood coverage is $25,000.

The word "loss" is no mystery. Webster's New International Dictionary (2d ed., G. & C. Merriam, Springfield, Mass., 1947) under "loss" shows the word to be a noun with a meaning in "Insurance" of "[d]eath, injury, destruction, or damage in such a manner as to charge the insurer with a liability under the terms of the policy...." *See also Nordahl v. Franzalia,* 48 Cal. App.3d 657, 664, 121 Cal.Rptr. 794, 798 (1975). But defendant's construction of FP–10 confuses "loss" with "occurrence" as though the endorsement read "any one occurrence" rather than "any one loss." The terms are not synonymous. In fact, under the Sequoia policy, several losses at one location may be incurred during any one occurrence, whether it is flood, fire, earthquake, or tornado.

Nevertheless, plaintiffs believe that FP–10 is "internally ambiguous."

If it is, and if one of the reasonable interpretations of FP–10 favors plaintiffs, as the foregoing analysis demonstrates, the endorsement must be strictly construed against Sequoia and in favor of plaintiffs, especially where the clause attempts to limit or exclude coverage or to avoid liability. *Meyer Jewelry Co. v. General Ins. Co. of America,* 422 S.W.2d 617, 623 (Mo.1968); *Brugioni v. Maryland Cas. Co.,* 382 S.W.2d 707, 710–11 (Mo.1964); *Giokaris v. Kincaid,* 331 S.W.2d 633, 636 (Mo.1960); *Corder v. Morgan Roofing Co.,* 195 S.W.2d 441, 446 (Mo.1946).

Clearly, considering defendant's and the majority's construction of FP–10 and the foregoing construction, each of which might be said to be reasonable, the clause is susceptible of being understood in two possible senses and is, therefore, ambiguous. *Bennett v. American Life and Accident Ins. Co.,* 495 S.W.2d 753, 757 (Mo.App.1973). It must, therefore, be strictly construed against the insurer.

Accordingly, the order of the trial court granting defendant's motion for summary judgment should be reversed and judgment in favor of the plaintiffs entered on the issue of defendant's liability under FP–10 for such additional amounts as at trial they may be able to prove as loss of earnings due to flood damage to personal property at each restaurant, not to exceed $25,000 for each such business interruption loss. In all other respects, the judgment should be affirmed.