# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1209

_____

Altru Health System; Altru Specialty    *
Services, Inc.,    *
   *
      Plaintiffs - Appellees,    *
   *    Appeal from the United States
      v.    *    District Court for the
   *    District of North Dakota.
American Protection Insurance    *
Company, a member of Kemper    *
National Insurance Companies,    *
   *
      Defendant - Appellant.    *

_____

Submitted: October 19, 2000

Filed: February 6, 2001

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In April 1997, the Red River crested at twenty-six feet above flood stage in Grand Forks, North Dakota. When flood waters reached the parking lot of United Hospital, and the City's water system failed, the North Dakota Health Department ordered the Hospital to evacuate its patients to other facilities. The Hospital remained closed for three weeks. The Hospital owner, Altru Health System and Altru Specialty Services, Inc. ("Altru"), submitted a claim to its property insurer, American Protection

Insurance Company ("American Protection"), for over $5,000,000 in property damage to the parking lot, business interruption losses, and evacuation expenses. American Protection concluded that its liability was limited by the policy's $1,500,000 sublimit for flood losses. American Protection paid that amount, and Altru filed this action, contending that the Hospital's additional business interruption and extra expense losses were not subject to the flood loss sublimit. On cross-motions for summary judgment, the district court agreed with Altru and entered final judgment against American Protection for the stipulated amount of additional loss, $3,781,683.60.

American Protection appeals. In this diversity action, state law prescribes the rules for construing an insurance policy. See St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996). Under North Dakota law, "[t]he interpretation of an insurance policy is a question of law, fully reviewable on appeal." DeCoteau v. Nodak Mut. Ins. Co., 603 N.W.2d 906, 913 (N.D. 2000). Construing the policy and North Dakota law *de novo*, we reverse.

## I.

The American Protection policy provided coverage for property damage, business interruption, and extra expense losses arising from covered perils during the policy period, August 1, 1996, to August 1, 1997. Flood was an excluded peril unless added in a separate Flood Coverage Section. In the previous policy year, Altru had purchased limited flood coverage; the policy's Flood Coverage Section provided: "Notwithstanding any other limits stated in this Policy, the liability of the Company for losses resulting from any one Flood disaster shall not exceed $2,500,000 . . . ." On July 30, 1996, American Protection's underwriter wrote Altru's insurance agent proposing renewal terms for the policy year beginning August 1:

> The flood coverage will be restructured to incorporate Federal Flood coverage for policy location no. 1 [the United Hospital]. The insured

currently has an annual aggregate flood limit of $2,500,000 with a $25,000 deductible. *Since this location is in flood zone B, I would like to reduce [American Protection's] flood exposure, while still attempting to cause as little a change as possible to the client.*

Limits of $500,000 real property and $500,000 personal property at a $5,000 deductible are available from Federal Flood. This will be coupled with our new limit of $1,500,000 with the following deductible.

> $500,000 for loss, damage or expense to real property and,
> $500,000 for loss, damage or expense to personal property
> and $20,000 for loss, damage or expense to other than real
> or personal property.

The net effect of this restructure is that the client still has a $2,500,000 limit with a $25,000 deductible. *The only downfall from existing coverage that I can see is within the time element portion of coverage. That is, they cannot collect time element losses on the federal flood policy which leaves $1,500,000 for recovery from us. However, it is arguable that the property is more exposed than the time element and that this restriction is slight.*

(Emphasis added.) Altru accepted this proposal. Endorsement No. 8 of the August 1, 1996, renewal policy modified the Flood Coverage Section to provide that "a $1,500,000 sublimit of liability applies to any one flood disaster."

Business interruption and extra expense losses are two of the "time element" coverages in the policy.[1] The policy limited these coverages to losses caused "by the perils insured against" elsewhere in the policy. Here, the insured peril was a flood. American Protection argues that Altru's claim arose as a direct result of the April 1997 flood and therefore is subject to the flood coverage sublimit of $1,500,000. The issue

---

[1] For a general description of business interruption insurance, see <u>Polytech, Inc. v. Affiliated FM Ins. Co.</u>, 21 F.3d 271, 274-75 (8th Cir. 1994).

is whether this sublimit applies to the specific business interruption and extra expense losses Altru incurred.

Because flood waters did not damage the insured building, most of Altru's loss occurred when health authorities closed the Hospital for three weeks. This was a business interruption or time element loss, not a property loss. Coverage is found in paragraph 6 of the policy section entitled "Special Provisions Applying to Time Element Coverage." Paragraph 6, titled "Interruption by Civil Authority," provided:

> This Policy is extended to include the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding 2 consecutive weeks, when as a direct result of damage to or destruction of property within 1,000 feet of the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority.

The parties agree that the April 1997 flood damaged property within 1,000 feet of the Hospital, that access to the Hospital was "prohibited by order of civil authority," that this caused business interruption and extra expense losses, and that the business interruption coverage is limited to two weeks of Hospital operations. The district court concluded that the Civil Authority paragraph is clear and unambiguous -- "the phrase 'by the peril(s) insured against' merely provides a [coverage] triggering requirement, rather than a connection sufficient to subject the coverage provided in the [Civil Authority] provision to the sublimits contained in the flood endorsement." After the parties stipulated to the amount of additional loss covered as a result of the district court's ruling, American Protection appealed that ruling.

**II.**

To resolve this issue, North Dakota law requires that we "look first to the language of the policy as a whole, and if the language is clear on its face, there is no room for construction." DeCoteau, 603 N.W.2d at 913. "If there is a conflict between the provisions of an insurance policy and an endorsement, the endorsement prevails." Nodak Mut. Ins. Co. v. Heim, 559 N.W.2d 846, 850 (N.D. 1997). In construing the Civil Authority and Flood Coverage sections and Endorsement No. 8 as a whole, we agree with American Protection that two additional policy provisions are critical. First, Paragraph A of the policy Preamble described how limits of liability are to be applied:

> All liability for loss or expense under this Policy for any one occurrence shall not exceed the smallest of . . . any applicable sublimits of liability entered elsewhere in the Policy.

Both the two-week limitation in the Civil Authority coverage and the $1,500,000 limitation in Endorsement No. 8 to the Flood Coverage Section are "sublimits of liability." They are not mutually exclusive, and the Preamble expressly recognizes that multiple sublimits may apply to any one loss, so the question is whether the $1,500,000 sublimit is "applicable" to losses covered under the Civil Authority paragraph. Altru argues not, because there is no cross-reference to Endorsement No. 8 or the Flood Coverage Section in the Civil Authority paragraph. But this ignores a second critical provision, the unambiguous statement in the Flood Coverage Section that "all claims for loss, damage or expense arising out of any one Flood occurrence shall be adjusted as one claim." Altru's business interruption and extra expense losses arose out of the flood. Those losses, as well as the property damage to the Hospital's parking lot, must be "adjusted as one claim." Therefore, that claim is clearly and unambiguously subject to the $1,500,000 sublimit of liability found in the same Flood Coverage Section.

Altru counters that the Civil Authority coverage is a self-contained policy provision not subject to the flood coverage sublimit. We disagree. The Civil Authority paragraph provides coverage for losses "from an interruption of business *as covered hereunder*." (Emphasis added.) That necessarily refers the insured to other policy provisions governing business interruption losses, such as the Business Interruption Gross Earnings Coverage Section. In addition, the Civil Authority coverage is limited to "the peril(s) insured against," which requires analysis of covered perils and leads directly in this case to the Flood Coverage Section and its sublimit "for losses resulting from any one Flood disaster." Located within a preprinted section that explained time element coverages, the Civil Authority paragraph cannot be equated to a freestanding coverage added by separate policy endorsement. Cf. Gilbert/Robinson, Inc. v. Sequoia Ins. Co., 655 S.W.2d 581, 584-85 (Mo. App. 1983) (policy's business interruption section did not provide freestanding coverage independent of flood coverage limits).

Altru also argues that our interpretation of the policy thwarts the purpose of the Civil Authority paragraph, which is to cover the "secondary consequences" of a covered peril, such as a flood. But not all perils are treated the same by property insurers; flood coverage is frequently limited.[2] Here, for example, the policy provided Altru up to $110,000,000 in property damage coverage and $66,750,000 in business interruption coverage for covered perils such as fire. But American Protection was willing to provide only $1,500,000 coverage for any one flood disaster during the policy year in question, and the underwriter's July 30, 1996, letter to Altru's agent expressly warned that this sublimit would apply to time element losses such as business

---

[2]"The difficulty in predicting floods in some area[s], the unfortunate frequency of floods in other areas, and the great amounts of potential liability in either case, make flood insurance unattractive to most insurers, leading to federal government intervention and subsidies to ensure availability of such coverage." 11 RUSS & SEGALLA, COUCH ON INSURANCE § 153:58, at 153-76 (3d ed. 1998).

interruption and extra expense. In these circumstances, we cannot agree that applying the $1,500,000 sublimit frustrates the purpose of these coverages.

Finally, Altru relies upon several cases that resolved similar coverage disputes in favor of the insureds. But the relevant policy provisions in those cases were different in important respects. In <u>Mark Andy, Inc. v. Hartford Fire Insurance Co.</u>, 233 F.3d 1090, <u>modifying</u> 229 F.3d 710 (8th Cir. 2000), the policy did not unambiguously subject all losses caused by a flood, including business interruption and extra expense losses, to the flood sublimit, as the Preamble and the Flood Coverage Section do in this case. In <u>Victory Container Corp. v. Sphere Insurance Co.</u>, 448 F. Supp. 1043, 1044 (S.D.N.Y. 1978), the flood coverage limits appeared under the heading of "Property Limits," with no indication they also applied to business interruption losses. And in <u>Med Imaging Center, Inc. v. Allstate Insurance Co.</u>, 818 F. Supp. 333, 336 (M.D. Fla. 1993), the policy did not clearly state, as the Flood Coverage Section did in this case, that the sublimit at issue applied to all claims.

For the foregoing reasons, we conclude the American Protection policy clearly and unambiguously limited coverage for all claims arising out of the April 1997 flood, including Altru's claims for business interruption and extra expense losses, to $1,500,000. Accordingly, the judgment of the district court is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.