**FOR KIDS ONLY CHILD DEVELOPMENT CENTER, INC., Appellant,**

v.

**PHILADELPHIA INDEMNITY INSURANCE COMPANY, Appellee.**

No. 05–07–00546–CV.

Court of Appeals of Texas, Dallas.

July 25, 2008.

Rehearing Overruled Aug. 26, 2008.

Russell J. Bowman, Dallas, TX, for Appellant.

David J. Schubert, Schubert & Evans, P.C., Dallas, TX, for Appellee.

Before Justices WRIGHT, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

For Kids Only Child Development Center, Inc. appeals a summary judgment in favor of Philadelphia Indemnity Insurance Company. In two issues, appellant contends the trial court erred in granting summary judgment to appellee and in denying partial summary judgment to it. We affirm.

Appellant's day care center was flooded with four-inch to six-inch deep sewage flowing from floor drains in the building. According to Gail Sullivan, owner of the center and an eyewitness to the event, water was also flowing from a manhole in the street outside the building. A City of Garland official deposed in this case testified the overflow was caused by a stoppage in a twelve-inch city sewer main. According to a report prepared by the City water utilities department, the overflow resulted in "[c]omplete building flooded with sewage." As a result of the flood of sewage, appellant was forced to make repairs, replace items, and clean the center. The center was shut down completely for several days and partially closed for an extended period while repairs were made, resulting in loss of business income.

Appellant was insured under a policy written by appellee. Under the policy, appellee agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Subject to deductibles and certain conditions immaterial to our facts, the policy provided limits of $718,000 for the building, $70,000 for business personal property, $400,000 for loss of business income, and $10,000 for debris removal. A document styled "Causes of Loss–Special Form" defined "Covered Causes of Loss" as direct physical loss subject to a long list of exclusions. In this case, the material exclusion is found in section B(1)(g)(3), which excludes from coverage loss or damage caused directly or indirectly by "[w]ater that backs up or overflows from a sewer, drain or sump."

In addition to the standard coverage, appellant also took out a special endorsement styled "Elite Property Enhancement: Day Care Centers" providing additional coverage. The Elite Property Enhancement provides in part:

I. Schedule of Additional Elite Enhancement Endorsement Coverages and Limits

The following is a summary of increased Limit of Insurance and/or additional coverage provided by this endorsement. This endorsement is subject to the provisions of your policy.

Business Income and Extra Expenses
| | |
|---|---|
| (Including Contingent) | $100,000 |
| Back–Up of Sewers-Flood Damage | $ 25,000 |

Section VIII of the Elite Property Enhancement modifies the cause of loss exclusions to provide limited recovery for sewer and drain backups as follows:

VIII. The following is added and supersedes any wording to the contrary under the Cause of Loss Special form:

A. Back-up of Sewers and Drains

We will pay for the loss or damage caused by or resulting from flood damage or water that backs up from a sewer, drain or sump. We will pay not more than $25,000 in any one occurrence. This extension does not apply to roof drainage systems, gutters or downspouts.

The Elite Property Enhancement further provides that "[w]hen coverage is provided by this form and another coverage form attached to this policy, the greater limits of insurance will apply" and, unless "a specific Covered Cause of Loss is identified in this coverage enhancement, coverage for the losses described herein are applicable only for covered Causes of Loss as designated in the cause of loss form attached to the policy."

This case arose after the parties disputed the extent and amount of coverage the insurance policy affords. Appellee posited that the sewage overflow was subject to the sewer and drain backup exclusion in the main policy but appellee did have $25,000 coverage under the Elite Property Enhancement. Appellee has paid appellant the $25,000 it contends is due. Appellant characterized the sewage overflow event as an overflow from its plumbing system that does not trigger the sewer and drain backup exclusion. Thus, appellant contended, it should be able to recover its entire claim under the larger policy limits of the main policy. Alternatively, appellant argued, even if the overflow event is subject to the sewer and drain backup exclusion, its other losses for loss of income, extra expenses, and debris removal are not subject to the $25,000 sublimit. After payment of the $25,000, appellant contends appellee owes it an additional $151,888.27 under the policy. Appellant also raised claims for breach of contract, insurance code violations, deceptive trade practices, and breach of the duty of good faith and fair dealing.

Both parties sought traditional summary judgment. See Tex.R. Civ. P. 166a(c). On each motion, the movant had the burden of showing no genuine issue of material fact exists and it was entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgm't Co., 690 S.W.2d 546, 548 (Tex.1985). In reviewing the trial court's determination on each motion, we take as true evidence favorable to the nonmovant and resolve every inference in its favor. Id. at 548–49. We review all the evidence, determine all questions presented, and render the judgment the trial court should have rendered, or else remand if neither party met its burden. City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex.2000).

We interpret the insurance policy under the same rules for interpreting other types of contracts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003). If, as here, the insurer relies upon an exclusion to the policy, it bears the burden of proof to show the exclusion is applicable. *Crocker v. Am. Nat. Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex.App.-Dallas 2007, no pet.). We construe an unambiguous policy as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006). If a policy provision has more than one reasonable interpretation, it is ambiguous and must be construed in favor of the insured if a favorable construction is not unreasonable. *Id.* We read all provisions of the policy together, giving meaning to each sentence, clause, and word, in order to avoid rendering any portion inoperative. *Id.* at 748.

Appellant divides its issues into four "points of error" for our review. We will consider each point of error in turn.

■ In its first point of error, appellant contends the trial court erred in concluding that its loss was subject to the $25,000 sewer backup sublimit because the overflow event should be characterized as an accidental discharge or overflow from a plumbing system. Appellant notes that its policy with appellee provides "all risk" coverage subject to specific exclusions. A plumbing overflow is not one of the specified exclusions. Thus, appellant contends, it should be able to access the main insurance policy's higher limits for covered losses.

To support its position, appellant cites authorities interpreting surface water exclusions in the insureds' policies. *See State Farm Lloyds v. Marchetti*, 962 S.W.2d 58 (Tex.App.-Houston [1st Dist.] 1997, pet. denied); *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 258–59 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

In *Marchetti*, the insured's policy covered overflow from a plumbing system but excluded coverage for damage caused by flood or surface water. *See Marchetti*, 962 S.W.2d at 60. The insured's loss occurred when flood waters flowed into underground sewage lines and entered her home through a floor drain. *Id.* at 59. The court held that the policy covered the resulting damage because the water ceased to be flood or surface water when it entered the plumbing system. *See id.* at 61.

In *Valley Forge*, the court of appeals reversed summary judgment for an insured on a policy similar to the one in *Marchetti*. The court distinguished *Marchetti* on the ground that the water at issue, storm overflow that flooded a basement, never entered a pipe so as to change its status as flood or surface water. *See Valley Forge*, 174 S.W.3d at 258–59. Appellant cites these surface water cases as revealing that once water enters a building's plumbing system, its status changes and any damage it causes becomes a plumbing mishap which is not excluded under appellant's policy.

In light of the clear language in the insurance policy at issue, we do not find persuasive the surface water analogies in *Marchetti* and *Valley Forge*. The policy excludes coverage for "[w]ater that backs up or overflows from a sewer, drain or sump." Reading the exclusion so as to eliminate instances where water has traveled through appellant's plumbing system would, in effect, be reading the exclusion out of the policy. *See Fiess*, 202 S.W.3d at 748; *see also Jackson v. Am. Mut. Fire Ins. Co.*, 299 F.Supp. 151, 156 (M.D.N.C. 1968), *aff'd* 410 F.2d 395 (4th Cir.1969) (holding no conflict in policy provisions providing coverage for overflow from plumbing system but specially excluding

overflow caused by "water which backs up through sewers or drains"). We conclude the policy unambiguously excludes from coverage the type of drain and sewer backup appellant experienced.

■ Turning to the Elite Property Enhancement, appellant contends the Elite Property Enhancement's addition of limited coverage for sewer and drain backup creates an ambiguity in the policy that should be interpreted in its favor. Appellant points to Section VIII of the Elite Property Enhancement which "supercedes" the exclusion of sewer and drain backups found in the main policy. Appellant interprets Section VIII as repealing or voiding the exclusion in the main policy, thus rendering backup of sewers and drains a "Covered Cause of Loss" within the meaning of the policy. The policy provides that when coverage is available under two provisions of the policy, the insured may choose the greater limits of coverage. Thus, appellant contends, it may forego the $25,000 limit on backups in the Elite Property Enhancement and elect the richer coverage under the main policy.

Appellee responds that although Section VIII of the endorsement "supercedes" the exclusion of sewer and drain back-ups found in the main policy, nothing in Section VIII purports to change the definition of "Covered Cause of Loss" in the Causes of Loss–Special Form. Rather, Section VIII merely provides for a limited recovery for such events. The language of the policy supports appellee's interpretation.

Section VIII states that it "is added and supersedes any wording to the contrary under the Cause of Loss Special form." Thus, rather than constituting a blanket repeal of the sewer and drain backup exclusion in the Causes of Loss–Special Form, as appellant suggests, Section VIII supercedes only that portion of the language that is "to the contrary." It pro-

vides for the recovery of "not more than $25,000 in any one occurrence." *See Dallas Handbag Co. v. Royal Indem. Co.*, 390 S.W.2d 863, 865 (Tex.App.-Dallas 1965, no writ) (concluding there was no conflict between provision in policy excluding coverage for floods caused by backup of sewers and drains and provision establishing sublimit for water damage). Finding no ambiguity in the policy and no error in the trial court's determination, we overrule appellant's first point of error.

In its second point of error, appellant contends that even if the trial court correctly determined that the $25,000 sublimit for sewer backup applied, appellant is still entitled to recover, under either the main policy or the Elite Property Enhancement, additional damages for loss of income, extra expenses, and debris removal. The difficulty with appellant's contention is that, except for the limited recovery available under Section VIII of the endorsement, the parties' contract unambiguously provides that sewer and drain backups are not a "covered cause of loss" compensable under the policy.

In contending that it may recover under the main insurance policy, appellant again argues that Section VIII repeals the sewer backup exclusion. To accept appellant's theory, we must first ignore Section VIII's clear limitation of the amount recoverable. Section VIII provides for a limited recovery of $25,000 for "loss or damage" in "any one occurrence." This specific language cannot be reconciled with appellant's effort to expand the amount payable to $151,895.27 for "loss or damage" arising from the same occurrence. *See Altru Health Sys. v. Am. Protection Ins. Co.*, 238 F.3d 961, 964 (8th Cir.2001) (concluding sublimit for flood losses "for any one occurrence" applied to business interruption and extra expense claims where policy provided all losses arising out of flood damage

"shall be adjusted as one claim"). As we have already discussed, nothing in Section VIII purports to repeal the sewer backup exclusion in the Causes of Loss–Special Form. Rather, Section VIII provides a limited recovery for such an event. We cannot conclude the language is ambiguous or subject to conflicting reasonable interpretations as appellant suggests. The policy provides for recovery of loss of business income, extra expenses, and debris removal expenses arising from a "covered cause of loss." What constitutes a "covered cause of loss" is defined in the Causes of Loss–Special Form attached to the policy. The causes of loss form states flatly, "We will not pay for loss or damage caused directly or indirectly by .... water that backs up or overflows from a sewer, drain or sump." There is no ambiguity in the policy.

Regarding the Elite Property Enhancement, appellant points to other language it contends extends coverage not subject to the $25,000 sublimit for sewer backups. Appellant notes that Section VII(D) extends coverage for business income and extra expenses "when your covered building or business personal property listed on the Declarations is damaged by a covered cause of loss." Again, however, we note that the sewer backup is not a covered cause of loss on the Causes of Loss–Special Form and no language in the endorsement changes a sewer backup into a "covered cause of loss" beyond the limited grant of Section VIII. The prefatory language in Section VII states that Section VII "is added to the Building and Property Coverage Form under COVERAGE EXTENSIONS." The Building and Personal Property Coverage Form attached to the policy limits coverage to loss or damage "caused by or resulting from any Covered Cause of Loss." In a section styled "Covered Causes of Loss," the form refers the reader to the "applicable Causes of Loss Form as shown in the Declarations."

Seeking to avoid the application of the unambiguous wording of the policy, appellant cites to both published and unpublished authorities in other jurisdictions wherein courts determined that sublimits for various forms of direct damage did not apply to ancillary claims for loss of income and business interruption. *See, e.g., Dream Spa, Inc. v. Fireman's Fund Ins.,* No. 06–CV–13142, 2008 WL 355458 (S.D.N.Y. Feb. 6, 2008); *Mark Andy, Inc. v. Hartford Fire Ins. Co.,* 233 F.3d 1090, 1092 (8th Cir.2001); *Med Imaging Center, Inc. v. Allstate Ins. Co.,* 818 F.Supp. 333, 335 (M.D.Fla.1993). Appellant's authorities discuss policies that differ materially from the policy before us. Because the language of the policies is dissimilar and none restricted the insured from recovering more than $25,000 for damages caused by sewer backup "in any one occurrence," appellant's authorities are distinguishable and unpersuasive.

■ Appellant contends the endorsement does not state that income and expense losses are subject to the $25,000 sublimit for sewer backups. In fact, the endorsement does so limit such losses in Section VIII wherein it limits "loss or damage" arising from "any one occurrence." In the absence of the language in Section VIII granting a limited recovery for backups, there would be no recovery at all for business expenses, debris removal, and extra expenses because such damages all arose from a backup that is not a "Covered Cause of Loss" under the policy. Without a basis for recovery other than the provision in Section VIII, appellant is bound by the limitations in Section VIII. We overrule appellant's second point of error.

■ In its third point of error, appellant contends the trial court erred in failing to

award it a recovery for debris removal expense. Appellant interprets the policy as allowing it to recover up to $10,000 for debris removal in addition to the $25,000 sublimit on sewer and drain backups. Appellant contends this case is identical to *Strowig Properties, Inc. v. American States Insurance Co.*, 32 Kan.App.2d 7, 80 P.3d 72, 74–75 (2003). Undisputed evidence in the record shows appellant incurred $3,068 in debris removal expenses.

The Causes of Loss–Special Form obligates appellee to reimburse appellant for debris removal expenses "caused by or resulting from a Covered Cause of Loss." As we have already determined, except as provided in Section VIII of the endorsement, sewer and drain backups are not a "Covered Cause of Loss" and, thus, appellant is not entitled to reimbursement for its debris removal expenses. Although appellant correctly notes that the debris removal provision in the *Strowig* case is similar to the debris removal provision in appellant's policy, appellant fails to consider that the casualty loss in *Strowig*, the destruction of the insured's theater in a windstorm, was apparently a covered loss under the policy. *See id.* at 72–73. Thus, *Strowig* is distinguishable. We overrule appellant's third point of error.

In its fourth point of error, appellant contends the trial court erred in granting appellee summary judgment on claims for breach of contract, insurance code violations, deceptive trade practices and breach of the duty of good faith and fair dealing. Appellant's claims depend upon a showing that appellee failed to pay what it owed under the insurance policy. In both its brief and reply brief, appellant argues that its extra-contractual claims should not be dismissed because appellee breached its contract. The only other contention appellant raises is appellee's proffer to Sullivan of a check for $25,000 marked "Final Pay-

ment." The record shows appellee timely paid appellant the full $25,000 due under the policy. We conclude appellant has not raised a genuine issue of material fact on these other claims. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex.1995); *Crocker*, 211 S.W.3d at 936 (no claim for bad faith when insurer promptly denies claim that is in fact not covered). We overrule appellant's fourth point of error.

Having overruled appellant's points of error, we agree with the trial court's determination to grant summary judgment to appellee and to deny partial summary judgment to appellant. *See City of Garland*, 22 S.W.3d at 356. Accordingly, we overrule appellant's issues.

We affirm the trial court's judgment.