OPINION OF THE COURT
Shirley Werner Kornreich, J.
Plaintiff El-Ad 250 West LLC moves, pursuant to CPLR 3212, for partial summary judgment against defendant Zurich Ameri *634 can Insurance Company. Zurich opposes and cross-moves for partial summary judgment. Partial summary judgment is granted to Zurich for the reasons that follow.
I. Factual Background and Procedural History
The following facts are undisputed.
In October 2012, El-Ad was in the middle of developing a construction project on a building located at 250 West Street in Manhattan (the property). Zurich had issued El-Ad a builders risk insurance policy (the policy), effective January 10, 2011 through December 31, 2012. (See docket 10.) The policy is an “all risk” policy and covers, inter alia, property damage and delay in completion losses.
On October 29, 2012, while the policy was in effect, Super-storm Sandy caused damage to the property, and, as a result, caused delay in completion losses. The following day, on October 30, 2012, El-Ad notified Zurich of its losses. After negotiations between the parties and the involvement of adjusters, on July 2, 2013, El-Ad filed a partial proof of loss for $5 million. Zurich rejected El-Ad’s claims and, to date, has not paid for any of ElAd’s losses. El-Ad commenced this action on August 22, 2013, seeking coverage from Zurich under the policy.
The policy has a limitation of $115 million in coverage per occurrence, with further sublimits and aggregate limits. (Docket 10 at 6.) The two applicable sublimits are $108 million for “Physical Damage Coverage” and $7 million for “Delay in Completion” coverage. (Id.) The policy also contains a $5 million annual aggregate limit for losses caused by a flood.[1] (Id.) Moreover, flood losses are subject to a deductible that is the *635 greater of either $250,000 or five percent of the loss. (Id. at 7.) The policy defines flood losses as “all losses or damages arising” during a flood.[2]
The parties dispute whether delay in completion losses arising from a flood are subject to the policy’s flood limit and deductible. El-Ad argues that the flood loss aggregate limit and deductible only apply to physical damage to the property caused by a flood and not so-called “downstream” financial losses, such as delay in completion losses.
Zurich counters that nothing in the policy supports El-Ad’s physical/nonphysical damage distinction. Indeed, Zurich explains, unlike other similar policies (discussed in the case law below), the policy’s definition of flood loss does not refer to physical damage. Rather, “all losses or damages arising” from a flood are covered, and hence, Zurich maintains, delay in completion losses resulting from a flood are subject to the policy’s flood limitations. Additionally, the policy’s delay in completion endorsement states that “[a]ll other terms and conditions of the Policy to which this Coverage form is attached remain unchanged and apply equally hereto.” (Docket 10 at 30.) Moreover, such endorsement provides that its $7 million sublimit on delay in completion coverage “shall not increase the Policy Limit of Liability or any Aggregate Limit of Liability” and is “[s]ubject to all terms, conditions, limitations and exclusions of this Coverage and of the Policy.” {Id. at 27-28.)
In sum, Zurich’s position is: (1) excluding deductibles, the maximum recoverable amount under the policy is $115 million; (2) if the loss is for delay in completion, the maximum recoverable amount is $7 million; (3) if the loss is caused by a flood, the maximum recoverable amount is $5 million; ergo (4) if a flood causes delay in completion losses, the $5 million cap and flood deductible apply. Zurich’s reading of the policy is correct.
II. Discussion
Summary judgment may be granted only when it is clear that no triable issue of fact exists. (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986].) The burden is upon the moving party to make a prima facie showing of entitlement to summary judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Friends of Animals v Associated Fur *636 Mfrs., 46 NY2d 1065, 1067 [1979].) A failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidence sufficient to establish the existence of material issues of fact. (Alvarez, 68 NY2d at 324; Zuckerman, 49 NY2d at 562.) The papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997].) Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman, 49 NY2d at 562.) Upon the completion of the court’s examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
It is well established that “[insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured.” (Cragg v Allstate Indem. Corp., 17 NY3d 118, 122 [2011].) “[A]mbiguities in an insurance policy are to be construed against the insurer.” (Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708 [2012], quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 353 [1978].) An insurance policy, like all contracts, is unambiguous if “the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.” (Federal Ins. Co. v International Bus. Machs. Corp., 18 NY3d 642, 646 [2012] [internal quotation marks omitted].)
“[I]f a policy ‘has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion ... a court is not free to alter the contract to reflect its personal notions of fairness and equity.’ ” (Jacobson Family Invs., Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 102 AD3d 223, 231 [1st Dept 2012], quoting White v Continental Cas. Co., 9 NY3d 264, 267 [2007]; accord Greenfield v Philles Records, 98 NY2d 562, 569 [2002].)
*637 Provisions in an insurance policy “are not ambiguous merely because the parties interpret them differently.” (Mount Vernon Fire Ins. Co. v Creative Hous., 88 NY2d 347, 352 [1996].)
Though no New York court appears to have addressed the parties’ dispute, the parties cite to a number of persuasive cases from other federal and state courts. The most instructive is an Eighth Circuit case, Altru Health Sys. v American Protection Ins. Co. (238 F3d 961 [8th Cir 2001]).[3] In Altru, a flood caused a power failure, leading to the evacuation of a hospital. (Id. at 962.) The hospital filed a $5 million insurance claim for property damage. (Id.) The hospital’s policy, as in the instant case, had a lower sublimit for flood losses of $1.5 million. {Id.) The insurance company paid the hospital the $1.5 million, but refused to pay the full $5 million, leading to coverage litigation. (Id.)
The hospital argued that its losses did not arise from flood-caused property damage since the “flood waters did not damage the insured building.” (Id. at 963.) Rather, the hospital suffered a business interruption loss because the “health authorities closed the Hospital for three weeks.” (Id.) The Eighth Circuit rejected the hospital’s argument. The hospital’s policy defined a flood loss as any “losses resulting from any one Flood disaster.” (Id. at 964.) Hence, the Eighth Circuit reasoned, the hospital’s business interruption loss “arose out of the flood,” making it “clearly and unambiguously subject to the $1,500,000 sublimit of liability found in the same Flood Coverage Section.” (Id.) The Eighth Circuit, moreover, distinguished Altru from other similar cases where the applicable flood sublimit was held not to apply, since the policies in those cases did not state that the flood sublimit applies to all losses caused by a flood. (See id. at 965.)[4]
*638 Indeed, other courts presented with analogous flood sublimit provisions have applied reasoning similar to Altru. (See e.g. For Kids Only Child Dev. Ctr., Inc. v Philadelphia Indem. Ins. Co., 260 SW3d 652 [Tex App 2008]; Gilbert/Robinson, Inc. v Sequoia Ins. Co., 655 SW2d 581 [Mo Ct App 1983].) In contrast, the cases relied on by El-Ad, such as Penford Corp. v National Union Fire Ins. Co. of Pittsburgh (2010 WL 300838, 2010 US Dist LEXIS 3737 [ND Iowa, Jan. 19, 2010, No. 09-CV-13-LRR]), are inapposite because the policies at issue do not contain a definition of flood loss that is as broad as in Altru and in the instant case. For instance, in Penford, the policy’s flood definition made clear reference to physical damage. (See 2010 WL 300838, *6, 2010 US Dist LEXIS 3737, *18.) In contrast, here, as in Altru, the definition of flood losses includes all losses, not just physical property damage. The court in Penford explicitly recognized this distinction[5] and cited favorably to Altru and Kids for their analysis of policies where “explicit language . . . subjected all kinds of loss to certain sublimits.” (See 2010 WL 300838, *12 n 8, 2010 US Dist LEXIS 3737, *36 n 8 [emphasis added].)
Nonetheless, while Altru is persuasive, the court need not rely on case law to interpret the subject policy because the scope of the policy’s annual aggregate flood limit is clear. Declaration 7.C (2) states that “[t]he maximum amount [Zurich] will pay for loss or damage in any one OCCURRENCE*, and/or in the aggregate annually for loss or damage from all OCCURRENCES*, shall not exceed . . . [$5 million] by the peril of FLOOD*.” (See docket 10 at 6.) In section III.7, the policy provides that “[a]s respects the peril of FLOOD*, OCCURRENCE* shall mean all losses or damages arising during a continuous condition as defined in the definition of FLOOD*.” (See docket 10 at 20.)
In other words, a loss that would not have occurred but for a flood is subject to a $5 million annual aggregate limit, without regard to the type of loss suffered, since the expression “all losses or damages arising during [a flood]” clearly does not exclude nonphysical losses. Moreover, the delay in completion endorsement clearly and unambiguously states that it does not alter the sublimits in the policy. (See docket 10 at 27, 28, 30.) Nor does any portion of the endorsement state that the delay in completion’s $7 million sublimit is not subject to the flood loss *639 $5 million aggregate limit, just as all of the policy’s other sub-limits are so limited.
Finally, it should be noted that it is of no moment that El-Ad paid an extra premium for delay in completion coverage. Had El-Ad not paid this extra amount, it would not have been entitled to such coverage under any circumstances. To be sure, there are myriad possible causes of delay in completion losses. If the cause is something other than a flood (i.e. a terrorist attack, which has a $108 million sublimit), the full $7 million would be available. However, where, as here, the cause of the loss has its own, lower aggregate limit, that lower limit applies.
Accordingly, it is ordered that plaintiff El-Ad 250 West LLC’s motion for summary judgment is denied, and defendant Zurich American Insurance Company’s cross motion for summary judgment is granted to the extent that the builders risk insurance policy issued to plaintiff, bearing policy No. IM 4857676-00 (the policy), limits the amount defendant must pay for all “loss or damage” caused by the peril of flood including physical damage and economic delay in completion losses to $5 million, and that the policy’s flood deductible applies to such payments.

. The policy defines flood as
“[a] general and temporary condition of partial or complete inundation of normally dry land areas, including dewatered areas, from: (1) The rising, overflow, or expansion beyond normal boundaries of any body of water or watercourse, whether such body of water or watercourse is natural or man-made; (2) The release or breaking of the boundaries of natural or man-made bodies of water or watercourses including the release or overflow of any water impounded by a dam, dike, reservoir or any other barrier or diversionary device; (3) Tsunami, waves, tide or tidal waters, and storm surge; (4) The unusual and rapid accumulation or runoff of surface waters from any source; (5) Mudslides or mudflows where mudslide or mudflows means a river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water and deposited along the path of the current; or the spray from any of the foregoing, whether driven by wind or not.” (See docket 10 at 19.)

. See docket 10 at 20 (“As respects the peril of FLOOD*, OCCURRENCE* shall mean all losses or damages arising during a continuous condition as defined in the definition of FLOOD*”).

. North Dakota’s principles of insurance contract interpretation appear similar to New York’s. (See Altru, 238 F3d at 963.)

. The Fifth Circuit takes a somewhat different approach, albeit one that does not alter the result in this case. (See Seacor Holdings, Inc. v Commonwealth Ins. Co., 635 F3d 675, 683 [5th Cir 2011] [“when a policy’s flood definition did not exclude damage caused by other perils, then the flood limit of liability could apply” (emphasis added)]; accord Six Flags, Inc. v Westchester Surplus Lines Ins. Co., 565 F3d 948 [5th Cir 2009].) The court in Six Flags seemingly distinguished its approach from the Altru line of cases. (See Six Flags, 565 F3d at 960 n 13.) However, the Fifth Circuit, there, confronted the issue of which type of weather peril applied (e.g. hurricane versus flood), not whether an unambiguous and unqualified flood loss definition applies to all economic losses arising from a flood.

. The court held “that the Policy provisions” are not “substantively the same as those at issue in Altru.” (See Penford, 2010 WL 300838, *12, 2010 US Dist LEXIS 3737, *37.)