**Affirmed and Memorandum Opinion filed August 25, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00736-CV

---

### THE HANOVER CASUALTY COMPANY, Appellant

### V.

### SEVEN ACRES JEWISH CARE SERVICES, INC., Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2019-88919**

---

## O P I N I O N

In this dispute over insurance coverage, appellant The Hanover Casualty Company brings a permissive appeal from the trial court's interlocutory order rendering partial summary judgment in favor of appellee Seven Acres Jewish Care Services, Inc. and asks this court to resolve the following controlling question of law: Does Hanover policy's flood endorsement and flood limit control the amount of coverage available for Seven Acres' claimed business income and/or extra expense losses resulting from Hurricane Harvey flooding?

We conclude the flood endorsement did not control the amount of coverage available for Seven Acres' claimed business income and/or extra expense losses resulting from Hurricane Harvey flooding and affirm the interlocutory order of the trial court.

## I.    BACKGROUND

Seven Acres is a not-for-profit licensed nursing facility and licensed assisted-living facility in Houston, Texas. As a result of Hurricane Harvey, the facility sustained extensive physical damage and loss after its first floor was flooded. Seven Acres had to suspend operations following Hurricane Harvey and then resumed reduced operations for several months until the facility was repaired and relicensed with the state.

The parties do not dispute that Seven Acres was covered at the time of this loss by a commercial property policy issued by Hanover. The policy declarations describe two subtypes of commercial property coverage: (1) building and contents and (2) business-income coverage, including extra expense. The policy also contained a special endorsement providing a limit of $4.5 million in coverage for the peril of flood.[1]

Seven Acres made a claim on the policy for losses due to building damage as well as business-income losses. Hanover paid Seven Acres the entire $4.5 million limit applicable to the flood endorsement in the policy but refused to make any payments beyond the flood limit explaining that all claims arising from the flood—whether claims for property damage or business-income losses and extra expense—were subject to the flood limit. Seven Acres disagreed on the basis that its business-income losses claim was subject to a separate policy limit.

---

[1] The flood endorsement at issue in this appeal is not alleged to be part of the National Flood Insurance Program.

2

In January 2020, Seven Acres filed suit against Hanover seeking payment for its business-income and extra-expense claim pursuant to the policy.[2] Seven Acres filed a partial traditional summary-judgment motion seeking judgment as a matter of law that the policy's flood limit does not control the amount of coverage available for its business income losses, and the trial court granted the motion in October 2020. Hanover subsequently received permission from the trial court to appeal this interlocutory order of the trial court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); Tex. R. Civ. P. 168.[3, 4]

## II. ANALYSIS

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v.*

---

[2] Seven Acres' petition also included a claim for hail damage, which loss occurred before Hurricane Harvey. However, in its petition for permissive appeal, Hanover clarified the hail claim was not part of the permissive appeal and that it would seek severance of the claim.

[3] The rule states:

On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute. Permission must be stated in the order to be appealed. An order previously issued may be amended to include such permission. The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation.

Tex. R. Civ. P. 168. Hanover received permission from the trial court to appeal the interlocutory ruling in the order appealed. This court granted Hanover's petition for permissive interlocutory appeal on April 6, 2021.

[4] This permissive appeal is governed by the rules for accelerated appeals. Tex. R. App. P. 28.3 (k) (permissive appeals); *see also* Tex. R. App. P. 28.1(a) (accelerated appeals). As such, this court may hear an accelerated appeal on sworn and uncontroverted copies of the relevant documents in lieu of a clerk's record, as the parties did here. Tex. R. App. P. 28.1(e).

*Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

An insured has the initial burden of establishing coverage under the terms of the policy. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). To avoid liability, the insurer then has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage. *Id.*; Tex. R. Civ. P. 94 ("Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability[.]"). "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *JAW The Pointe*, 460 S.W.3d at 603.

Seven Acres generally established coverage under the terms of the policy. We must now decide whether Hanover established the disputed loss falls within an exclusion or limitation to the policy's coverage.

## A. Principles of construction

Texas courts construe insurance policies "using ordinary rules of contract interpretation." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). When doing so, courts must "determin[e] the parties' intent as reflected in the terms of the policy itself." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289

4

S.W.3d 828, 831 (Tex. 2009). Courts must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co*., 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126). If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted. *Nassar*, 508 S.W.3d at 258. Alternatively, if we determine that both interpretations are reasonable, then the policy is ambiguous. *Id*. In that event, "we must resolve the uncertainty by adopting the construction that most favors the insured," and because we are construing a limitation on coverage, we must do so "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem. Co.,* 466 S.W.3d at 119 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991)).

**B.    The policy**

The Building and Personal Property Coverage Form insured direct physical loss and damage to the property: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The policy defines Covered

5

Cause of Loss to "mean[] direct physical loss unless the loss is excluded or limited in this policy."

Without a flood endorsement, the policy did not cover "loss or damage caused directly or indirectly" by flood or other water damage. However, Seven Acres' policy included an optional flood endorsement which modified the policy and included flood as a Covered Cause of Loss.

The Business Income (and Extra Expense) Coverage Form insured against the loss of business due to the necessary suspension of operations caused by a direct physical loss or damage to property:

1. Business Income

. . . .

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

. . . .

2. Extra Expense

a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

The flood endorsement only addresses the business-income coverage to clarify that the definition for the "period of restoration" for purposes of a business-income or extra-expense claim "applies to each Flood event."

6

The flood endorsement contains a separate limit of insurance with the following explanation of the limits of the insurance:

E. Limits of Insurance

1. Per "Occurrence" Limit Of Insurance

The most we will pay for loss or damage caused by Flood in any one "occurrence" is the applicable per "occurrence" Limit Of Insurance shown in the Flood Declarations regardless of the number of locations involved.

. . . .

3. Maximum Per "Occurrence" Limit Of Insurance

Regardless of the number of per "occurrence" Limits shown in the Flood Declarations, the Maximum per "Occurrence" Limit Of Insurance shown in the Flood Declarations is the Most we will pay in any one "Occurrence".

## C.    Analysis

### 1.    Hanover's interpretation

Hanover argues that the flood endorsement plainly and unequivocally states the parties' intent to modify the terms of the Policy, including the Business Income (and Extra Expense) Coverage form. Hanover also relies on the language and definitions in the flood endorsement which state the policy will only cover $4.5 million for *all loss and damage caused by flood*.[5] Because the flood endorsement provides a benefit to Seven Acres not otherwise afforded by the policy, Hanover maintains that Seven Acres is bound by the terms and the limit of the flood endorsement. For these reasons, Hanover asserts the only reasonable interpretation of the policy language is that if an insured's business-income claim is triggered by and arises out of a peril that provides a specific limitation—as the Flood

---

[5] In contrast, the general Building and Personal Property Coverage Form states with respect to the limits of insurance: "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations."

Endorsement does in this case—the business-income coverage arising from that peril is subject to that same limitation.

## 2.     Seven Acres' interpretation

Seven Acres responds that the language of the policy is unambiguous that the flood limit does not also cap business-interruption and extra-expense claims arising out of a flood event. Seven Acres addresses the structure of the policy noting that the property-coverage form covers "direct physical loss" to real and personal property. The Business Income Coverage Form covers business losses flowing from a suspension of business operations due to a covered direct physical loss. The business-income coverage has a separate premium and limit from the property coverage. Given that the flood endorsement added flood as a covered cause of loss under the policy, Seven Acres argues that the flood endorsement and its limit applied only to "direct physical loss." Seven Acres also argues that if Hanover wanted to make business-income and extra-expense claims subject to the flood limit, then Hanover could have expressly added language to that end as Hanover did with other provisions in the policy.

## 3.     Policy construction

### a.     The flood endorsement modified business-income coverage

Hanover argues that the flood endorsement expressly modified the insurance provided under the Business Income Coverage Form. While the flood endorsement does clearly state that it modified that form, as well as several other forms, Hanover makes too much of this statement. The preamble to the flood endorsement states that the Business Income Coverage Form is modified but does not specifically explain how it is modified. Not only does the flood endorsement specifically modify a definition applicable to the Business Income Coverage

8

Form,[6] the flood endorsement never states that any coverage under the Business Income Coverage Form would be subject to the flood limit of insurance.

> b. The flood endorsement does not subject Business Income or Extra Expenses claims resulting from the aftermath of a flood event to the flood limit

Hanover relies on language in the policy that the "most we will pay for loss or damage caused by Flood in any one 'occurrence' is the applicable per 'occurrence' Limit Of Insurance shown in the Flood Declarations regardless of the number of locations involved." Hanover further cites language in the flood endorsement which states "Occurrence" means all loss or damage that is attributable to an act, event, cause, or series of similar, related acts, events, or causes involving one or more persons or not involving any persons.[7]

Flood, which the policy defines as a "general and temporary condition of partial or complete inundation of normally dry land areas," causes direct physical damage or loss to property. The flood endorsement adds flood as a Covered Cause of Loss and therefore provides insurance coverage for "direct physical loss" caused by flood. In contrast, the Business Income Coverage Form provides coverage for actual loss of busines income sustained due to the necessary suspension of business operations. The triggering event for business-income coverage is the suspension of business caused by a Covered Cause of Loss. Here, Seven Acres alleged that it sustained actual losses in business income because it was necessary to temporarily suspend its business operations. It was not the flood itself that caused the

---

[6] The flood endorsement states: "The 'period of restoration' definition stated in the Coverage Form . . . applies to each Flood event."

[7] It is noteworthy that the language repeatedly used by Hanover in its appellate briefing is that the flood limit "shall apply to all covered damages/losses *resulting from* a covered flood event." However, the policy does not use the phrase "resulting from." The policy itself states that the "most we will pay for loss or damage caused by Flood in any one occurrence is the applicable per 'occurrence' limit."

business-income losses, but rather the temporary suspension of business operations. Therefore, we disagree with Hanover that the parties' clear intent was that the flood limit shall apply to business-income losses "resulting from" a covered flood event and decline to read additional language into the policy that restricts coverage.

Although the business-income form is part of and related to the other parts of the policy, each part of the policy covers different types of loss, and different forms or endorsements contain different limits that apply to that type of loss. These limits do not apply to other losses not covered by that part. The purpose of purchasing business-income coverage is for an insured to protect itself against monetary losses when the insured was required to temporarily suspend its business operations. Such a claim is intended to coexist with a claim for damage, or physical loss, to a building or other covered property. Because we have no explicit language subjecting business-income claims to the flood limit in this policy, we must give effect to the policy language as written and not effectively read into the flood endorsement a broader exclusion than intended.

If Hanover had intended to restrict business-income claims resulting from a flood event, Hanover should have included language in the flood endorsement to that effect as it has in other endorsements in the policy. For instance, in the Data Breach Coverage Form, the policy specifically states "[t]he Additional Expense Coverages Aggregate Sublimit of Insurance is part of, and not in addition to, the Data Breach Coverage Aggregate Limit of Insurance."

Further confirming Seven Acres' interpretation, the language in the flood endorsement discussing ensuing loss clearly explains that the flood limit does not subject all other policy claims for ensuing loss to the flood limit:

10

5. Ensuing Loss

In the event of covered insuring loss for example, loss caused by Fire, Explosion or Sprinkler Leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by Flood, Fire, Explosion, and Sprinkler Leakage is the Limit of Insurance applicable to Fire. We will not pay the sum of the Fire and Flood Limits of Insurance.

. . . .

Example #1

The damage due to Flood is $500,000. The damage due to Fire is $500,000.

Payment for Flood damage is $400,000 ($500,000 damage minus $5,000 Flood deductible = $495,000; Limit is $400,000).

Payment for Fire damage is $400,000 ($500,000 damage capped at the difference between the Basic Limit and the Flood Limit).

Total Loss Payment is $800,000.

In the example of ensuing loss described in the policy, a fire caused by a flood resulted in additional losses. The fire damage in the example could be described as a loss resulting from a flood event. Despite the fact that the fire was a result or consequence of the flood, the policy example makes clear there could be coverage for the fire loss above and beyond the flood limit.

The language of the flood endorsement does not support Hanover's interpretation to strictly subordinate all flood-related losses and claims to the flood limit, and we conclude Hanover's interpretation is not reasonable.

c.     Seven Acres benefits from the flood endorsement

Hanover also argues that Seven Acres cannot benefit from the flood endorsement while at the same time escaping its limits. However, this argument requires acceptance of Hanover's interpretation that the limit in the flood endorsement limited all claims resulting from a flood event. Because we disagree

11

with Hanover's interpretation, this argument is also unpersuasive.[8]

### 4. Case law

The parties extensively brief case law in which insureds make claims for busines-income losses after flood or water events. All the cases cited are merely persuasive authority for this court, which we may follow or disagree with in our discretion. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are obligated to follow only higher Texas courts and the United States Supreme Court."). The common thread between all the cases reflects, unsurprisingly, that the breadth of the language in the flood endorsement determines whether business-income coverage is subject to a limit.

Seven Acres relies on a recent case from the Southern District of Texas involving a similar contest over business-income coverage arising out of flooding from Hurricane Harvey. *See Alley Theatre v. Hanover Ins. Co.*, 436 F. Supp. 3d 938 (S.D. Tex. 2020) (Rosenthal, J.). Seven Acres argues *Alley Theatre* is particularly persuasive because it involved the same insurance company, the same law firm representing Hanover, and the exact coverage issues in dispute here. *Id.* at 940–41. In *Alley Theatre*, the federal district court found that Alley Theatre's business-loss claims were not subject to the flood limit. *Id.* at 946 ("Hanover's interpretation applies the Flood Endorsement Limit to more categories of damage than the Flood Endorsement covers and fails to give effect to the overall Policy structure and language.").

---

[8] Similarly, Hanover's argument that the flood-endorsement limit applies when "the Business Income Form is interrelated to other provisions in the Policy" requires acceptance of the same interpretation.

Another case relied on by Seven Acres is *Baylor College of Medicine v. American Guarantee & Liability Insurance Co.*, No. CV H-02-1711, 2002 WL 35644976 (S.D. Tex. Oct. 30, 2002) (Rosenthal, J.). In *Baylor*, the parties disagreed over whether a flood-endorsement limit applied to lost-business income caused by flood. *Id.* at *1. The court found that the two coverage parts "reflect the distinction, recognized in the cases, between direct physical loss or damage to covered property from a covered cause of loss, on the one hand, and, on the other hand, reduction in business income resulting from the suspension of operations during the covered property's restoration." *Id.* at *6 (collecting cases distinguishing between two types of coverage). The district court ruled that the flood endorsement limit applied "to all flood loss or damage covered by the Flood Endorsement, which is all 'direct physical loss or damage to Covered Property' due to flood." *Id.* at *7.

Though the insurance policies discussed in *Alley Theatre* and *Baylor* are not identical to Seven Acres' policy, the policies contain similar definitions and structure such that the opinions are persuasive. Hanover argues in response that *Alley Theatre* and *Baylor* involved the interpretation and analysis of policies silent or ambiguous as to whether the full limits applied, which they argue is not applicable in this case. We disagree. While the flood endorsement here states that it modifies the business-income coverage, the flood endorsement is silent as to the effect of the flood endorsement on the limit for the business-income coverage.

Hanover relies on cases from a variety of jurisdictions to support its position, although these cases primarily involve different or broader flood-endorsement policy language. In *Altru Health System v. American Protection Insurance Co.*, the Eight Circuit Court of Appeals concluded there was no business-income coverage for an insured hospital which was forced to close because flood waters damaged

13

the local water system. 238 F.3d 961, 964 (8th Cir. 2001). Though the hospital was not physically damaged by flood, it made a claim for its business-income losses and expenses. *Id.* at 962. In contrast to Seven Acres' policy, the flood endorsement in *Altru* unambiguously subjected all losses caused by a flood, including business-income and extra-expense losses, to the flood limit. *Id.* at 965; *compare with Mark Andy, Inc. v. Hartford Fire Ins. Co.*, 233 F.3d 1090, 1092 (8th Cir. 2000) (policy was silent as to whether business-income and extra-expenses losses would be subject to flood limit).[9]

The only Texas state-court case cited is *For Kids Only Child Development Center, Inc. v. Philadelphia Indemnity Insurance. Co.*, 260 S.W.3d 652 (Tex. App.—Dallas 2008, pet. denied), which is distinguishable. In that case, a daycare center was flooded with sewage from floor drains in the building; the overflow was excluded from coverage loss or damage caused directly or indirectly by water that backs up or overflows from a sewer, drain, or sump. *Id.* at 653. Because the daycare center procured an additional special endorsement covering the loss, the insurer paid the daycare center the limits under the special endorsement. *Id.* at 653–54. The parties disputed whether the special-endorsement limit precluded the daycare from recovering its business-income losses under the policy above and beyond the special-endorsement limit. Though our sister court concluded the daycare center's coverage was subject to the limit in the special endorsement, its

---

[9] *See also El-AD 250 W., LLC v. Zurich Am. Ins. Co.*, 130 A.D.3d 459 (N.Y. App. Div. 2015) ("El-AD II"); *El-AD 250 W., LLC v. Zurich Am. Ins. Co.*, 44 Misc. 3d 633, 638–39 (N.Y. Sup. Ct. 2014) ("El-AD I") (policy contained broader definition of flood loss); *New Sea Crest Healthcare Ctr., LLC v. Lexington Ins. Co.*, No. 12 CV 6414, 2014 WL 2879839, at *1–2 (E.D. N.Y. Jun. 24, 2014) (policy contained no reference to physical damage when defining flood damage); *Gilbert/Robinson, Inc. v. Sequoia Ins. Co.*, 655 S.W.2d 581, 583 (Mo. Ct. App. 1983) (policy made no reference to flood damage as physical loss). Because these cases involve varying policy language, they do not provide any persuasive rationale affecting our interpretation of the policy.

holding was premised on the conclusion that no language in the endorsement changed a sewer backup into a "covered cause of loss" *Id*. at 657. In Seven Acres' policy, the flood endorsement specifically adds flood as a Covered Cause of Loss. Therefore, the reasoning of *For Kids Only* is not applicable or persuasive to the facts before us.

We overrule Hanover's sole issue on appeal.

### III. CONCLUSION

Having overruled Hanover's sole issue on appeal, we affirm the interlocutory order of the trial court.[10]

/s/      Charles A. Spain
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

---

[10] Because this is a permissive appeal of the trial-court's interlocutory summary-judgment order, only that order is before this court—not the entire trial-court case. We do not remand the case to the trial court because the case is not before us. *Chappell Hill Sausage Co. v. Durrenberger*, No. 14-19-00897-CV, 2021 WL 2656585, at *5 n.6 (Tex. App.—Houston [14th Dist.] June 29, 2021, no pet.) (mem. op.).